UNITED STATES of America, Appellee,

v.

Larry Neil MAXWELL, Appellant.

No. 77–2097.

United States Court of Appeals,
Ninth Circuit.

Dec. 5, 1977.

Jerald W. Newton (argued), Los Angeles, Cal., for appellant.

Daniel K. Green, Asst. U. S. Atty., (argued) on the brief, Terry J. Knoepp, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING and GOODWIN, Circuit Judges, and JAMESON *, District Judge.

PER CURIAM:

The issue in this 21 U.S.C. § 841(a)(1) case is whether the border patrol had the right to stop Maxwell's automobile at a checkpoint on Highway S–22 in the El Centro Customs District of Southern California. If the stop was unlawful, we do not reach the issue of probable cause for the search.

For 25 years the border patrol had intermittently operated an immigration checkpoint on Highway S–22. The border patrol used two or three locations between three and seven miles west of Salton City. The officers brought the equipment to the site each time from a Highway 86 checkpoint.

During the few (6–24) hours a month the checkpoint is open, it is marked by a small "stop ahead" sign 100–200 yards in advance with battery-operated blinking yellow lights, half a dozen traffic cones, a stop sign, and a border patrol vehicle facing traffic. When a car approaches, the officer in the patrol car activates the car's flashing red lights. The stop signs are ordinary road signs. There are no electrical connections, buildings, or other indications of permanence. There may be some poles; the record is not clear. There are no houses for some distance.

The government argues that the 25-year-long use of this checkpoint makes it permanent. Such an argument blurs the distinction between permanent checkpoints, temporary checkpoints, and roving patrols

* The Honorable William J. Jameson, United States District Judge, for the District of Montana, sitting by designation.

which the Supreme Court made in *Almeida-Sanchez v. United States,* 413 U.S. 266, 268, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), and restated in *United States v. Martinez-Fuerte,* 428 U.S. 543, 552, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). That the government, if the budget permitted, would man the S–22 checkpoint on a full-time basis and install appropriate equipment does not affect its present status. Long-continued intermittent use of a temporary checkpoint does not make S–22 anything but a customary site for a temporary checkpoint. The real issue is not whether S–22 is a permanent or a temporary checkpoint but whether the operation of a temporary checkpoint is governed for Fourth Amendment purposes by *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), prohibiting unfounded stops by roving patrols, or by *Martinez-Fuerte, supra,* permitting stops without founded suspicion at permanent immigration checkpoints.

We start with the recognition that the Fourth Amendment generally prohibits warrantless searches and seizures but that there are exceptions to this general rule. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Allowing a stop, which is a seizure, without even founded suspicion, let alone probable cause, is a major exception to the general rule. We must therefore examine the Supreme Court's reasons for making the exception. And we should hesitate to extend it to a new situation unless the Court's rationale compels us to do so. We must be especially hesitant in light of the Court's refusal in *Brignoni-Ponce* to make an exception for roving-patrol stops. The Supreme Court's balancing in *Martinez-Fuerte* militates against a non-founded-suspicion stop at the S–22 checkpoint. The Court in *Martinez-Fuerte* weighed five factors in determining that the permanent checkpoint stop there did not require founded suspicion:

(1) Checkpoints are located on major highways. Routine inquiries apprehend many smugglers and aliens and force others onto sideroads where their attempt to by-pass the checkpoints may call them to the attention of roving patrols. At a fixed checkpoint, the requirement of reasonable suspicion would be impracticable because of heavy traffic flows. 428 U.S. at 556–57, 96 S.Ct. 3074.

(2) The intrusion upon the Fourth Amendment interests of those in the car is limited at a permanent checkpoint. Those stopped are required to answer a question or two and possibly may be asked to produce a document. In a roving-patrol stop the objective intrusion is similar, but the subjective intrusion is much greater. Roving patrols often stop cars at night on lonely roads. This procedure may frighten motorists. At permanent checkpoints the motorists can see other vehicles being stopped. They can also see visible signs of the officers' authority; the motorist is thus much less likely to be annoyed or frightened. 428 U.S. at 557–58, 96 S.Ct. 3074.

(3) At a permanent checkpoint there is a limited interference with legitimate traffic. Motorists know or may learn of the checkpoint location and can be reasonably confident that they will not be stopped elsewhere. The interference is discretionary on the officers' part but less so than in the case of a roving patrol. The checkpoint operation assures motorists that the stop is duly authorized. The location is chosen by supervisors, not by the person in the field. Only those cars passing the checkpoint are subject to stops, and the decision on the checkpoint's location is subject to a limited judicial review. 428 U.S. at 558–59, 96 S.Ct. 3074.

(4) The Supreme Court attached importance to the practice in *Martinez-Fuerte* of stopping only a small number of cars among the large number passing the permanent checkpoint. Selective referrals were thought to be routine enough that they would not be frightening or offensive. The court also felt that selective referrals minimized intrusions upon the travel of the general motoring public. The importance of this last consideration is unclear, as the court used it in rejecting the argument that

selective referrals without founded suspicion involved too much discretion to be permissible. 428 U.S. at 560, 96 S.Ct. 3074.

(5) Finally, the court noted that the principal protection of Fourth Amendment interests lies in appropriate limitations on the scope of the stop. Detention beyond that limited scope requires consent or probable cause. The officer may, under the authority of the stop itself, only question the driver and passengers about their citizenship and ask them to explain suspicious circumstances. 428 U.S. at 567, 96 S.Ct. 3074. *Brignoni-Ponce,* 422 U.S. at 881–82, 95 S.Ct. 2574 (1975).

With the foregoing standards in mind, it appears to be impossible to justify the S–22 stop and remain consistent with Fourth Amendment values. Most of the reasons for sustaining the stop at a permanent, fixed checkpoint are missing in this case. The traffic is light. The motorist on the lonely road is halted by blinking red lights, the ownership of which is likely to be wholly unknown to the motorist. There are no other vehicles nor signs of civilization or human habitation in the vicinity. The intrusion is sudden, unexpected, and somewhat traumatic. Every car is stopped, but this form of democracy affords small comfort to the motorist if he knows nothing of it.

The most that can be said for the practice at S–22 is that it was born of felt necessity and economy. But neither of these factors has strong claims against the Fourth Amendment's guarantees of security from governmental intrusion.

We conclude that the government has not made out a case for treating the kind of stop described in this record as one justified by *Martinez-Fuerte,* and accordingly we must hold that the evidence developed as a result of the stop should have been suppressed. *See United States v. Calvillo,* 537 F.2d 158 (5th Cir. 1976).

Reversed.