**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hector VENEGAS–SAPIEN,**
**Defendant-Appellant.**

No. 84–1882.

United States Court of Appeals,
Fifth Circuit.

May 23, 1985.

Evelina Ortega, Fed. Public Defender, El Paso, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., El Paso, Tex., Sidney Powell, Thomas J. McHugh, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Hector Venegas-Sapien, convicted of transporting and conspiring to transport illegal aliens, argues that the United States Border Patrol violated the Fourth Amendment by stopping his truck at a temporary highway checkpoint without reasonable suspicion of criminal conduct, a stop he urges is analogous to one by a roving patrol. Guided by *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), we reject the argument and affirm the conviction.

I

On June 9, 1984, at about 1:00 a.m., uniformed Border Patrol agents stopped Hector Venegas-Sapien for a citizenship check at the ZT-6 highway checkpoint near Hillsboro, New Mexico. One agent looked through the back window of the camper shell on Venegas-Sapien's Ford pickup, saw eleven people "stacked like a cord of wood," and arrested Venegas-Sapien. In a written order, the district court denied Venegas-Sapien's motion to suppress the fruits of the stop. After a bench trial, Venegas-Sapien was convicted of one count of conspiracy to transport illegal aliens and three counts of transporting illegal aliens, and was sentenced to concurrent three-year terms on each count.

The ZT-6 checkpoint is on an unpopulated stretch of New Mexico Highway 90, a lightly-traveled, two-lane road running roughly northeast to southwest and forming a triangle with Interstates 25 and 10. The checkpoint is about 11 miles east of I-25, and consists of a van parked in a small roadside clearing. Motorists approaching ZT-6 from the east see three signs, which read "Slow," "No Passing," and "Stop Ahead." A series of traffic cones leads from the third sign to the checkpoint. Atop the van is a stop sign with a red blinking light. The van has no Border Patrol insignia or other identifying marks visible to motorists. When ZT-6 is in operation, all westbound vehicles are stopped for a citizenship check.

The ZT-6 checkpoint is meant to catch illegal-alien transporters trying to skirt the permanent checkpoints on I-25 and I-10. ZT-6 has been operated intermittently since June of 1982, with "gaps" caused by insufficient manpower. When Venegas-Sapien was arrested, ZT-6 had been operating continuously for two days.

II

In *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), the Supreme Court held that the Border Patrol could stop vehicles at permanent highway checkpoints for brief citizenship inquiries without any reasonable suspicion of criminal activity. The Court distinguished *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), which had required reasonable suspicion for roving patrol stops, by noting several ways in which checkpoint stops were less intrusive to motorists. Motorists stopped at checkpoints can see that the roadblock is officially authorized and affects all traffic. Nor by their nature do checkpoint stops present risks of wholly unfettered executive discretion attendant upon roving patrols. Checkpoints both actually and apparently limit the discretion exercised by field agents, in that administrators decide where to locate the roadblocks, and field agents can stop only cars passing those points. There is then little room for agents to exercise arbitrary power. Finally, because motorists can see that checkpoints are run in a "regularized manner," they are subjectively reassured that they are not being randomly harassed. 428 U.S. at 558-59, 96 S.Ct. at 3083-84.

The Court reaffirmed the reasoning of *Martinez-Fuerte* in *Delaware v. Prouse*, 440 U.S. 648, 656, 99 S.Ct. 1391, 1397, 59

L.Ed.2d 660 (1979). In *Prouse,* the Court ruled that random license checks violated the Fourth Amendment, but stated: "Questioning of all traffic at roadblock-type stops is one possible alternative." *Id.* at 663, 99 S.Ct. at 1401.

Virtually all of the assurances behind the Court's approval of checkpoint stops in *Prouse* and *Martinez-Fuerte* are present here. Motorists arriving at ZT–6 are not simply flagged down; they can see warning signs and traffic cones indicating that all cars must stop. Although ZT–6 is not always operating, when it is, it is always at the same preestablished location. The checkpoints validated in *Martinez-Fuerte* were functional only 70% of the time. 428 U.S. at 554 & n. 10, 96 S.Ct. at 3081 & n. 10. As in this case, part of the "down" time in *Martinez-Fuerte* resulted from personnel shortages. *Id. See United States v. Gordo-Marin,* 497 F.Supp. 432, 435 (S.D. Fla.1980) ("[T]he 'permanence' requirement refers not to the duration of the checkpoint, but to its location."), *aff'd on basis of district court opinion,* 659 F.2d 58 (5th Cir.1981). Finally, it is undisputed that the ZT–6 site was chosen by administrators, and was not the discretionary call of Border Patrol field agents. These characteristics of the ZT–6 checkpoint protect the interests of drivers as required by *Prouse* and *Martinez-Fuerte.*

Venegas-Sapien argues that this case is factually distinguishable from *Martinez-Fuerte* in two ways. First, traffic is light on Highway 90, making roving patrols a practical alternative to the checkpoint. Second, ZT–6 has no permanent structures, and less explicit warning signs than the sites in *Martinez-Fuerte,* making it less obvious to motorists that ZT–6 is a fixed and duly authorized Border Patrol station.

Neither distinction makes a difference for Fourth Amendment purposes. Permanence of the physical structure is not required, and Venegas-Sapien's contention that roving patrols could operate effectively on Highway 90 overlooks the message of *Prouse* that checkpoints intrude less upon motorists' privacy than roving stops. Although ZT–6 was not, perhaps, marked as plainly as the checkpoints in *Martinez-Fuerte,* the presence of the signs and traffic cones, plus the fact that the Border Patrol agents here were uniformed and immediately identified themselves and stated the purpose for the stop, were sufficient to allay lawful travelers' fears of capricious law enforcement. To the extent that *United States v. Maxwell,* 565 F.2d 596 (9th Cir.1977) indicates otherwise, we reject its reasoning. We note that the Ninth Circuit itself has questioned *Maxwell's* continuing force in light of *Prouse. United States v. Hernandez,* 739 F.2d 484, 488 (9th Cir. 1984).

The district court correctly denied Venegas-Sapien's motion to suppress evidence. As Venegas-Sapien raises no other point of error, his conviction is AFFIRMED.