**UNITED STATES of America**

v.

**Martha Elena DE LA ROSA–
VALENZUELA.**

No. P–97–CR–151.

United States District Court,
W.D. Texas,
Pecos Division.

Nov. 24, 1997.

James Blakinship, Fre Brigman, III, U.S. Attys., Alpine, TX, for Plaintiff.

Jose Antonio Chavez, Odessa, TX, for Defendant.

### ORDER

BUNTON, Senior District Judge.

**BEFORE THE COURT,** in the above-captioned cause of action, is the Defendant's Motion to Suppress, filed September 23, 1997. The Defendant asserts that the evi-

dence seized should be suppressed because the seizure was the result of a warrantless search not supported by probable cause and seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

On November 7, 1997, this Court conducted an evidentiary hearing on the Defendant's Motion. After considering the testimony offered at the hearing, this Court denied the Defendant's Motion. However, the Court has some reservations regarding what constitutes a search in some circumstances and raises these reservations in the hope that the Fifth Circuit will shed some light on them. The following Findings of Fact and Conclusions of Law support the Court's denial of the Motion.

## I. FINDINGS OF FACT

1. United States Border Patrol Agent Joan Howe ("Howe"), who has been with the United States Border Patrol for a little over nine months, was working in the Marfa, Texas sector on August 23, 1997 during the day. She was working at the immigration checkpoint which is located approximately four miles south of Marfa on Highway 67. Marfa is approximately sixty miles from Presidio and the United States and Mexico border. Specifically, she was assigned to work at the primary inspection area.

2. At noon, the Defendant entered the checkpoint driving a four-door, 1986 Buick Century. There was nothing initially suspicious about the vehicle itself. For instance, it was not riding low, did not have an excessive amount of mud on the tires, and there was no unusual smell emanating from the vehicle as Agent Howe approached it. Agent Howe inquired as to the Defendant's citizenship and learned that she was a Mexican citizen with proper documentation and that she was traveling from Chihuahua, Mexico to Odessa, Texas in order to do some shopping. Overall, Agent Howe testified that she detected nothing suspicious about the Defendant, her appearance, or her identification. Therefore, Agent Howe's immigration check was complete.

3. However, as Agent Howe was asking the Defendant questions, Agent Richard Russell ("Russell") performed a superficial check of the vehicle looking for contraband or other people in the vehicle. Agent Russell testified at the hearing that he has been with the United States Border Patrol since January of 1997. He further testified that he often performs quick inspections of the vehicles which enter the checkpoint and that he is looking for drugs or illegal aliens. Generally, he "taps" on some of the vehicles' gas tanks and on the doors and also occasionally looks underneath the vehicles in order to see if there is anything suspicious about the vehicle. Although he did not obtain consent from the Defendant and did not have any probable cause, Agent Russell tapped on the gas tank of the Defendant's vehicle and heard a noise resembling a "thud" as opposed to a ringing sound. Agent Russell, through experience, has learned that a "thud" is not a normal sound for a gas tank. Most gas tanks, which are metal, like the Defendant's and not plastic, emit a "ringing" sound when tapped. Experience has also taught Agent Russell that gas tanks are common storage places for drugs.

4. Upon hearing the "thud," Agent Russell crawled underneath the vehicle to determine whether the tank was actually metal. He discovered that it was a metal gas tank. Based upon this "thud" sound, Agent Howe asked the Defendant for consent to have a canine check the vehicle. The Defendant consented. The canine, to which he referred, is certified to detect heroin, marijuana, cocaine, and their derivatives, as well as people. Agent Howe then asked the Defendant to drive her vehicle over to the secondary inspection area. The canine was then brought over to the vehicle, and he consequently alerted to the gas tank area indicating the possibility of the presence of drugs. Agent Howe then asked the Defendant for consent to have the vehicle placed on a lift for a further inspection of the gas tank. The Defendant consented. The Agents then saw what appeared to be tool marks on the bolts near the gas tank beneath the vehicle. The marks on the bolts and the straps looked as if the straps had been removed and replaced since they appeared out of place. Experience has told the Agents that such marks

usually represent that there had been some questionable activity in that area. They also noticed a trap door near the gas tank. Upon opening the trap door, the Agents discovered marijuana. Subsequently, they arrested the Defendant.

## II. CONCLUSIONS OF LAW

### A. The Purpose of the Checkpoint .

1. Systematic stops of all vehicles at an immigration checkpoint, like the one in this case, are primarily employed to curb the illegal transportation of aliens. Essentially, such checkpoint stops are considered reasonable and therefore constitutional because there is no discretion when all of the vehicles are stopped at the checkpoint. *See United States v. Venegas–Sapien,* 762 F.2d 417, 419 (5th Cir.1985) (finding that a stop at a highway checkpoint for the purpose of brief citizenship inquiry is constitutional). Usually, a stop at such a checkpoint takes about a minute to perform. If an officer determines that an occupant's status in the United States is legal, then the purpose of the stop has been met, unless, of course, the officer has a reasonable suspicion that the occupant is involved in illegal activity. Then, naturally, the officer is justified in investigating into matters beyond the scope of the standard immigration check.

United States Border Patrol agents are authorized by the Attorney General to assist her in carrying out her functions under the Controlled Substances Act, pursuant to Title 21 of the United States Code, Section 873(b) and 965. Essentially, the Border Patrol agents have a limited authority and cross-designation with the Drug Enforcement Agency to (1) make arrests in the enforcement of the Controlled Substances Act and the Controlled Substances Import and Export Act; (2) conduct warrantless searches for evidence incident to arrest in the enforcement of the Acts; and (3) make seizures of the controlled substances and/or property pursuant to the provisions of the Acts.[1]

## B. The Fourth Amendment and its Exceptions

2. The Fourth Amendment governs all searches and seizures conducted by government officials. It provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,
> . . .

U.S. CONST., amend. IV. The Supreme Court has determined that a search without a warrant generally requires reasonable, but not certain, probable cause.[2] *See Carroll v. United States,* 267 U.S. 132, 155–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (finding that probable cause is the "reasonableness" standard for warrantless searches and seizures). An unlawful search or seizure does not preclude federal prosecution or any subsequent conviction, however, but instead the result of such a violation is the suppression of any illegally seized evidence.

3. It is surely undisputed that warrantless searches are per se unreasonable. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, it is also undisputed that warrantless searches of vehicles are permitted by the Fourth Amendment provided, for instance, the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. *See United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. McSween,* 53 F.3d 684 (5th Cir.1995), *cert. denied,* 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995). This particular exception is referred to as the "automobile exception." *See United States v. Buchner,* 7 F.3d 1149, 1154 (5th Cir.1993), *cert. denied,* 510 U.S. 1207, 114 S.Ct. 1331, 127 L.Ed.2d 678 (1994). Whether an officer has the requisite probable cause depends upon whether probable cause exists based upon the totality of

---

1. Such designation to the United States Border Patrol is used for the purpose of limited Title 21 authority and cross-assignment with the Drug Enforcement Agency.

2. "Probable cause" is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place ." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

circumstances which are weighed "in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. Muniz–Melchor,* 894 F.2d 1430, 1438 (5th Cir.), *cert. denied,* 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990).[3] Again, probable cause is determined on the totality of circumstances.[4] Furthermore, the subjective intentions of the officers are irrelevant in a probable-cause Fourth Amendment analysis. Otherwise, delving into the subjective minds of the officers would send the federal courts on endless and fruitless expeditions into the psyche of the officers who made the search or stop. *See Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (finding that whether a violation has occurred is based upon an objective assessment of the officer's actions and not on a review of his subjective intent).

■ 4. In order to establish a Fourth Amendment violation, an individual must demonstrate that he or she had a legitimate expectation of privacy in the area searched. *See Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The Fourth Amendment protects only those expectations of privacy which society accepts as objectively reasonable. *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (finding that society would not express an expectation of privacy in its garbage which was left out on the street for collection). In determining whether a legitimate expectation of privacy actually exists, a Court can consider several factors, including:

whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises.

*United States v. Ibarra,* 965 F.2d 1354, 1360 (5th Cir.1992) (citing *United States v. Haydel,* 649 F.2d 1152, 1155 (5th Cir. Unit A July 1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982)).

■ 5. Generally, the Fourth Amendment does not recognize a privacy interest in parts of a vehicle's interior which are plainly visible from the vehicle's exterior. *See, e.g., Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). *See also New York v. Class,* 475 U.S. 106, 114, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (finding no reasonable expectation of privacy in the Vehicle Identification Number (VIN) which is re-

---

3. Probable cause may be based on a variety of sources including: personal observations of officers; agent experience; and hearsay from reliable sources. *See, e.g., Pennsylvania v. Labron,* 518 U.S. 938, 939, 116 S.Ct. 2485, 2486, 135 L.Ed.2d 1031 (1996) (officer observed suspect place drugs into the trunk of a vehicle and saw a second suspect act in ways that suggested the same activity); *United States v. Thomas* 12 F.3d 1350, 1366 (5th Cir.) (officer smelled something like marijuana emanating from the vehicle), *cert. denied,* 511 U.S. 1114, 114 S.Ct. 2119, 128 L.Ed.2d 676 (1994); *United States v. Laury,* 985 F.2d 1293, 1313 (5th Cir.1993) (officer relied on hearsay from informant who had previously provided accurate information which led to arrests, and he also provided detailed information about the suspect).

Thus, there are many things, when viewed in light of all of the circumstances, which trigger probable cause. For instance, the slight odor of marijuana alone may justify a search of a vehicle. *See, e.g., United States v. Reed,* 882 F.2d 147, 149 (5th Cir.1989); *United States v. Henke,* 775 F.2d 641, 645 (5th Cir.1985); *United States v. Gordon,* 722 F.2d 112, 114 (5th Cir.1983).

However, in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the officers had the requisite probable cause to believe that controlled substances were stored in a particular container, and likewise, they were permitted to search that container. They were not permitted to search the entire vehicle because the container was the subject of the suspicion and not the vehicle. "The relationship between the automobile and the contraband was purely coincidental, ..." *Ross,* 456 U.S. at 813 (1982).

4. Generally, the Circuits have determined that reasonable suspicion cannot be based upon a single, isolated incident of human activity. *See, e.g., Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (finding no reasonable suspicion when an individual arrived on a flight from a known narcotics city-source and glanced repeatedly at another passenger); *United States v. Ponce,* 8 F.3d 989, 999 (5th Cir.1993) (finding the removal of contents of a suspect's pocket exceeded scope when pocket could not contain weapon even though officer stated that he saw a small bump).

quired by the government to be displayed); *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (finding that the use of a flashlight to illuminate a darkened area does not constitute a search). Likewise, there is no expectation of privacy in a vehicle's exterior in that "[i]t travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). An intrusion into a vehicle has been determined to be modest in the grand scheme of things in that the intrusion usually only takes about one minute and involves brief responses to certain questions and the production of certain identification documents. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (describing such a stop as short, and visual inspection is limited to the vehicle's exterior and does not involve a search of the vehicle and its occupants). Arguably, though, a person does have a legitimate expectation of privacy in his or her vehicle, in that he or she would not wish for the vehicle to be searched without cause. The Court, likewise, senses that a problem exists sometimes, as in this case, when there is an intrusion based upon nothing at all.

■ 6. The following is a quick overview of the constitutionality of a consent search. Government agents may conduct a search, without a warrant or probable cause, based upon an individual's voluntary consent. In addition, any evidence thus discovered may be seized. *See United States v. Shabazz*, 993 F.2d 431, 438–39 (5th Cir.1993) (finding that the vehicle was legally searched when owner gave consent). The courts have found that the scope of a consent search may not exceed the scope of the consent given. *See United States v. Jaras*, 86 F.3d 383, 390 (5th Cir.1996) (consent to search the vehicle did not include the luggage in the trunk when the driver stated that the luggage was not his). Finally, consent to a search may be revoked, and therefore, if a person effectively withdraws consent then the officer may not continue with the search. *See United States v. Ho*, 94 F.3d 932, 934 (5th Cir.1996).

7. In sum, a warrantless search at a fixed immigration checkpoint is reasonable only if based upon probable cause or consent. Consent and probable cause are alternative grounds justifying warrantless vehicle searches. If either ground existed *prior* to the search, the search was valid and proof of the other ground is not required. *Muniz–Melchor*, 894 F.2d at 1437 (quoting *United States v. Sutton*, 850 F.2d 1083, 1085 (5th Cir.1988)). *See also, Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (finding that the police may search without a warrant when they receive consent to do so from a person with authority to give consent).

## C. The Canine with the Certified Nose

■ 8. A canine "sniff" is not a search, and agents do not need reasonable suspicion to conduct a dog "sniff" search. *United States v. Hernandez*, 976 F.2d 929, 930 (5th Cir.1992), *cert. denied*, 508 U.S. 914, 113 S.Ct. 2352, 124 L.Ed.2d 261 (1993); *United States v. Goldstein*, 635 F.2d 356, 361 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981). Essentially, the Supreme Court has stated that:

> A "canine sniff" by a well-trained narcotics detection dog ... does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of luggage.... Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item.... This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

*United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

■ 9. In this case, the trained dog was brought over to the Defendant's vehicle, *after* the Agent had tapped the gas tank. Even though the Agent did not obtain permission to tap on the vehicle's body with a hard object, before the dog was brought to the vehicle, the Agents asked for consent to allow the dog to perform the "sniff" pseudo search. The Defendant consented. The dog alerted to the gas tank. As a result, the required probable cause was then created which merited the constitutional inspection of the alert-

ed area. Marijuana was then discovered in the tank, and the Defendant was arrested. This brings us to the end of the story—with a footnote: if it was not for the wonder dog with the certified nose and the subsequent consent to search the alerted area, the Court would have serious reservations about denying the Motion to Suppress.

### D. The Court's Reservations: To Tap or Not to Tap, Is That a Search?

10. The Court is concerned about the stop in this instance because the intrusion went a little bit further than the average brief questioning and document producing immigration stop. The level of the Court's concern is heightened by the fact that the "tapping" of the vehicle's doors and gas tank in this case was neither consented to nor based upon probable cause. Agent Howe testified that she did not feel that there was anything suspicious about the Defendant, her appearance, her behavior, her identification, or her vehicle. The Defendant also was never asked whether the Agents could perform a sound check of the gas tank, and therefore, she never gave any consent. Arguably, a vehicle's gas tank is a container, and, in the Court's analysis, federal officers, based upon reasonable probable cause, may search without a warrant any container located in the vehicle.[5] Obviously, if the circumstances in this case determined that suspicious marks or marijuana-looking leaves were in plain view around the gas tank, then there would be no problem regarding the Agent's tapping habit. However, "unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment." *Greenwood*, 486 U.S. at 46 (citing *Robbins v. California*,

453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981)). Are a gas tank's contents worthy of such protection?[6]

11. The Fifth Circuit dealt with a tapping-the-gas-tank issue in *United States v. Muniz–Melchor*, 894 F.2d 1430 (5th Cir. 1990), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). However, this Court finds that the *Muniz–Melchor* case is quite distinguishable from the facts of the case at hand. Quite simply stated, the Fifth Circuit found that there was no legitimate expectation of privacy in the exterior of an exposed propane tank mounted atop of the open bed of a pickup truck. Experienced officers observed a truck which was returning from Mexico and had an exposed propane tank. The tank appeared to have been laid on its side, it was secured with clean bolts, and it had a pressure reading which did not change when the tank was rocked. In addition, when the officer, trained in tank concealment by the Customs Department, "tapped" the tank, it did not emit a regular bell-like ring. Thus, it was determined that based upon a totality of circumstances, the officer had probable cause to search the tank for contraband or a concealed illegal alien. In making its finding, the Fifth Circuit distinguished *Arizona v. Hicks*, on two grounds.[7] First, the Fifth Circuit asserted that the search in *Hicks* occurred at a residence, and an individual generally has a significantly higher expectation of privacy in the home rather than in one's vehicle. Second, by removing the stereo equipment to reveal the serial number, the officer effectively revealed something which had been previously left concealed by the defendant. In *Muniz–Melchor*, according to the Fifth

---

**5.** An officer is permitted to conduct a warrantless search of a container which is within a vehicle if he has probable cause to believe that a vehicle contains contraband. In fact, based upon such reasonable probable cause, the officer can search the entire vehicle. *California v. Acevedo*, 500 U.S. 565, 573, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

**6.** Distinguishing "worthy" from "unworthy" containers would be improper and inconsistent with the Fourth Amendment because

—the central purpose of the Fourth Amendment ... [a] traveler who carries a toothbrush

and a few articles of clothing in a paper bag ... [may] claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case. *Greenwood*, 486 U.S. at 48.

**7.** *Arizona v. Hicks* found that a search occurred when an officer, who was lawfully on the premises, actually picked up a piece of stereo equipment to read the serial number in order to determine whether the equipment had been stolen. 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

Circuit, the defendant could not have expected privacy in that no-one would tap his large propane tank which had been quite obviously mounted in the open bed of his truck. *Muniz–Melchor*, 894 F.2d at 1436.

12. However, this Court, in agreement with Circuit Judge Goldberg who dissented in the *Muniz–Melchor* case, finds that a search is a search is a search, and the majority's conclusion that the threshold of what constitutes a search is relatively lower for automobiles than in other places is a "non sequitur."[8] *Id.* at 1443. Furthermore, and as previously stated, a container cannot be searched unless its contents are in plain view or unless its contents can be inferred from the container's obvious outward appearance. *Id.* at 1443 n. 13 (citing *United States v. Sylvester*, 848 F.2d 520, 525 (5th Cir.1988)). Judge Goldberg also asserts that the tapping was unrelated to the authorized intrusion and also "the appearance of the tank, like the turntable's in *Hicks*, did not suggest the presence of contraband. The agent's tap constituted a search ..." *Id.* at 1443.

13. This Court will take the tapping issue even further than Judge Goldberg. Arguably, the large, exterior propane tank mounted openly on the truck's bed could possibly have contained an illegal alien who was determined to enter the States.[9] But also, in the *Muniz–Melchor* case, the suspicion was strengthened by this fact and the fact that there were visible marks on the tank indicating recent manipulation. In the case at hand, however, the gas tank was not only not a large propane tank mounted on the bed of a truck, but it was also quite hidden in the cavity of the vehicle as are most gas tanks. In addition, there simply was no probable cause to suspect that the Defendant was harboring any contraband in her vehicle's gas tank or contributing to any criminal act through her vehicle's gas tank.

14. Fortunately for the Government, however, the wonder dog with the certified nose came to the rescue and cleared up any doubt of the presence of contraband in the gas tank, and this particular Defendant was consequently found guilty of transporting drugs. The dog's alert gave the Agent the constitutional right to further investigate the situation. But, suppose the wonder dog was suffering from a cold one particular day and was unable to alert to contraband? Should we permit armed, uniformed federal officers to go about randomly tapping on vehicles based upon no reasonable suspicion at all, and based instead, upon no reason at all? Where is the reasonable suspicion here to allow an officer to go about a-tapping? The Court feels uneasy about answering either of these questions which might have to be answered one day in another order on a motion to suppress involving the tapping-the-tank issue. The recurrent theme in all of the search and seizure cases analyzed is that there existed at least some scintilla of suspicion or probable cause which then fully permitted the warrantless search. The Court simply wants to know just how much of a right do United States Border Patrol Agents have to go thumping on vehicles without consent or probable cause, especially while the defendant is being distracted with questions from another officer.

15. The Fifth Circuit, at some point, needs to clear up this search issue and determine, if it so chooses, the following issues:

    1. Does the *Muniz–Melchor* case, which allowed an agent to tap on a propane gas tank, apply only to large, exterior propane tanks which are attached to the bed of a truck and which, based

---

8. As a side-note, would the level of expectation be higher for the homeless individual who is forced or who chooses to live in his or her vehicle effectively making the vehicle his or her home?

    The Circuits have extended the Fourth Amendment privacy protections to temporary living spaces. *See, e.g., Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (protection applies to hotel rooms); *United States v. Gooch*, 6 F.3d 673, 676–78 (9th Cir.1993)

(protection applies to a camper's tent). *But cf. United States v. Ervin*, 907 F.2d 1534, 1538 (5th Cir.1990) (finding that the search of a camper-trailer was valid because it was parked in a hotel lot, the defendant was not using the trailer as a home, and the trailer was readily mobile).

9. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351.

upon an officer's experience and other circumstances, look suspicious?

2. Or is the tapping on a vehicle's doors and gas tank clearly not a search, just as a dog "sniff" is not considered a search, and if so, therefore no consent or probable cause is necessary?

3. Or is every agent required to either gain consent or have reasonable probable cause before he or she taps around the vehicle which is stopped at an immigration checkpoint?

16. The Fourth Amendment still has a very secure place in the United States Constitution, but this Court, which handles numerous suppression hearings, would greatly appreciate some clear guidance on this issue so that an individual's Fourth Amendment rights simply are not "tapped" away. Fourth Amendment safeguards should not be eliminated just because there are those cases in which the vehicle which was tapped actually contained contraband. Not all people are criminals, but all people have Fourth. Amendment rights.

17. After all that has been written and done, the Court denies the Defendant's Motion to Suppress.

18. This Court is satisfied that when the dog alerted to the tank, Agent Howe had the requisite probable cause to search and seize the marijuana which was discovered. Accordingly, she lawfully seized the bundles.

19. Since this Court finds that the final search was based on probable cause and therefore was valid, the Defendant's Motion to Suppress should be denied. Accordingly,

**IT IS ORDERED** that the Defendant's Motion to Suppress is hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Reveal Confidential Informant's Identity, filed September 23, 1997, is hereby **DENIED.**