141 F.3d 1180
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff-Appellee,
v.
James Randolph DAVIS, Defendant-Appellant.
 No. 97-50301.
D.C. No. CR-96-09140-HBT.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted Mar. 4, 1998.
Decided Mar. 18, 1998.
 
 Appeal from the United States District Court for the Southern District of California Howard B. Turrentine, Senior District Judge, Presiding.
 Before BRUNETTI, THOMPSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Randolph Davis appeals his conviction, after a jury trial, for possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction under 28 U.S.C. § 1291. We affirm Davis's conviction, but vacate his sentence and remand for resentencing.
 
 A. Juror Misconduct
 
 3
 We reject Davis's juror misconduct argument. The district court credited McManus's denial that he had done any outside research and the record supports this finding. With the exception of McManus's comments to Attorney Lanahan, McManus specifically and consistently denied making any outside inquiries into the Bundy case. The district court based its denial of Davis's new trial motion on its finding that McManus had engaged in "braggadocio" when speaking with Lanahan and that Davis had not researched any outside materials.
 
 
 4
 McManus's knowledge of the Bundy case, whatever it may have been, falls into the category of general knowledge and the not the kind of extraneous information that taints a jury verdict to the point of requiring a new trial. See McDowell v. Calderon, 107 F.3d 1351, 1367 (9th Cir.1997). With regard to the argument that McManus used information from the Bundy case in deciding to vote for conviction, Federal Rule of Evidence 606(b) precludes consideration of a juror's thought process in arriving at a verdict.
 
 B. Denial of Peremptory Challenge
 
 5
 The district court did not deny Davis a peremptory challenge. His trial counsel exercised eleven strikes and the eleven stricken jurors were excused. Trial counsel argues he erred in exercising one peremptory strike and urges us to reverse the district court's exercise of discretion in refusing to recall the excused juror. We decline to do so.
 
 C. Denial of Motion to Suppress
 
 6
 The district court did not err in denying Davis's motion to suppress evidence from the Border Patrol's S-2 checkpoint.
 
 
 7
 In United States v. Maxwell, 565 F.2d 596 (9th Cir.1977), we held that a stop made at a Border Patrol checkpoint located randomly at various points along an isolated highway was an unreasonable seizure. Id. at 598. There, the checkpoint became operational when an officer stopped somewhere along a four mile section of a rural highway and set up a stop sign, some traffic cones, and a warning sign with lights placed 100-200 yards in advance of the checkpoint. Id. at 596.
 
 
 8
 Since Maxwell, we have twice upheld the constitutionality of checkpoint stops similar to the S-2 checkpoint stop in the present case. See United States v. Soto-Camacho, 58 F.3d 408 (9th Cir.1995); United States v. Hernandez, 739 F.2d 484 (9th Cir.1984). In holding that these checkpoints did not violate the Fourth Amendment, we emphasized the three factors established in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). See Soto-Camacho, 58 F.3d at 413; Hernandez, 739 F.2d at 487.
 
 
 9
 In Martinez-Fuerte, the Supreme Court held that the government's legitimate interests advanced by the temporary seizure outweighed the minimal intrusion on a motorist's privacy. Martinez-Fuerte, 428 U.S. at 561-62. In balancing these interests during a checkpoint stop, the Court specifically considered: (1) whether the procedure was routinely and evenly applied to all vehicles; (2) whether the checkpoint involved little officer discretion and was not likely to result in abuse; and, (3) whether the appearance of authority of the officers at the checkpoint would allay the concerns of lawful travelers. Id. at 556-60.
 
 
 10
 Applying the Martinez-Fuerte factors emphasized in Hernandez and Soto-Camacho, the S-2 checkpoint did not violate the Constitution. As in Soto-Camacho, the checkpoint required each passing car to stop momentarily and required the occupants to answer routine citizenship questions from a Border Patrol officer. See Soto-Camacho, 58 F.3d at 410. The initial stop was no longer than that required to ascertain citizenship. Thus, like other constitutionally valid checkpoints, the initial intrusion is minimal, limited to a few questions and what an officer can see within the vehicle. See Martinez-Fuerte, 428 U.S. at 558; Soto-Camacho, 58 F.3d at 411; Hernandez, 739 F.2d at 487.
 
 
 11
 The checkpoint also allowed officers only limited discretion similar to that in Soto-Camacho. The S-2 checkpoint was in the same location whenever it was open. Officers referred to a map and highway markings which detailed specifically where signs, cones and lights were to be stationed. The officers themselves did not determine where or when the checkpoint would be operational. Compare Soto-Camacho, 58 F.3d at 410 (Sector Chief determined when to open checkpoint). Rather, the decision to open the checkpoint was made by administrators based on personnel availability. The officers were limited to the type of minimal discretion specifically approved in Martinez-Fuerte: on-the-spot decisions referring drivers to secondary inspection. See Martinez-Fuerte, 428 U.S. at 564.
 
 
 12
 Finally, the Border Patrol made the S-2 checkpoint visible and clearly recognizable as a stop by lawful authority. Signs cautioned approaching motorists of the Border Patrol checkpoint a quarter-mile in advance. A flashing light was followed by a line of cones to the checkpoint. The checkpoint had a bus painted in Border Patrol colors with communications equipment and a detention cell. When it was operating, Border Patrol vehicles were present at the checkpoint. In addition, the site was equipped with flood lights to illuminate the checkpoint during night operations. As in both Soto-Camacho and Hernandez, this plainly worked to allay concerns of motorists as to the legitimacy of the stop. See Soto-Camacho, 58 F.3d at 410 (checkpoint was advertised, lighted and marked so motorists could see Border Patrol was in charge); Hernandez, 739 F.2d at 487 ("checkpoint's visibility, appearance and the presence of numerous MPs in uniform communicated to motorists that the stop was officially authorized"). Further, the show of legitimate authority at the S-2 checkpoint was significantly greater than the warning sign, flashing light and traffic cones found lacking in Maxwell.
 
 
 13
 D. Refusal to Grant Three-Level Decrease for Acceptance of Responsibility
 
 
 14
 Although the district court granted Davis a two-level reduction in his offense level for acceptance of responsibility under USSG § 3E1.1(a), the court declined to grant an additional one-level decrease under section 3E1.1(b). Having carefully reviewed the record, we conclude Davis is entitled to the additional one-level decrease under section 3E1.1(b).
 
 
 15
 Section 3E1.1(b) mandates an additional one-point reduction if (1) section 3E1.1(a) is applied, (2) the offense level prior to applying section 3E1.1(a) is over fifteen, and (3) the defendant provides timely information of his offense. See United States v. Villasenor-Cesar, 114 F.3d 970, 973 (9th Cir.1997). The district court found Davis had sufficiently accepted responsibility to warrant a two-point reduction under section 3E1.1(a). Davis's offense level prior to applying section 3E1.1(a) was over fifteen. Davis gave detailed information of his involvement in the smuggling operation at the time of his arrest, thus providing timely information of his offense at the earliest opportunity. Therefore, the district court was required by USSG § 3E1.1(b) to grant Davis a further one-point reduction.
 
 
 16
 Davis's conviction is AFFIRMED. His sentence is VACATED and this case is REMANDED to the district court for it to resentence Davis, granting him an additional one-point reduction in his offense level under section 3E1.1(b).
 
 
 17
 AFFIRMED in part; REVERSED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3