**UNITED STATES of America**

v.

**Andres LOYA**

**No. CRIM.2:02CR91–M.**

United States District Court,
N.D. Mississippi,
Delta Division.

Nov. 14, 2002.

Charles W. Spillers, U.S. Attorney's Office, Oxford, MS, for Plaintiff.

Andres Loya, Oxford, MS, Craig V. Morton, Morton & Germany, PLLC, Tom Emerson Smith, Tom Emmerson Smith, Attorney, Memphis, TN, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS CONTENTS OF SEARCH

MILLS, District Judge.

This cause came to be heard on defendant Loya's motion to suppress all evidence obtained by the government resulting from one warrantless search and two separate warranted searches of Loya's property located at 1540 Broady Road, Nesbit, Mississippi on June 4, 2002. The court has reviewed the briefs, heard the testimony and finds as follows:

### FACTS

On June 4, 2002, Commander Mark Blackston and Sgt. Keith Combs of DeSoto County Sheriff's Department met with investigators from two different law enforcement agencies who were investigating stolen property allegations.

#### Search Number One

An informant provided by officers of the Marshall County Sheriff's De-

partment took Commander Blackston and Sgt. Combs to 1540 Broady Road, Nesbit, Mississippi—Andres Loya's residence. Commander Blackston and Sgt. Combs went onto the property where they encountered an "old Mexican man" in the front yard. The officers spotted a lawn mower in the driveway and other items they believed to be stolen scattered around the property. The officers asked the old man if they could "look around." Not understanding what the officers were requesting, the "Mexican shrugged his shoulders." Pursuant to such consent, the officers proceeded to copy serial numbers from the lawn mower in the driveway and other equipment on the property. An "N.C.I.C." inquiry revealed some of these items to be stolen.

### Search Number Two

Following their initial sortie onto Loya's property, Commander Blackston and Sgt. Combs decided to get a search warrant. In support of their request for a warrant, the officers attached an affidavit to their application stating the following underlying facts and circumstances as a basis for the issuance of the warrant:

On Tuesday, June 04, 2002, investigators with two (2) different Law Enforcement Agencies arrived in DeSoto County, MS and met with the Officers listed above. During this meeting, a suspect in the custody of these Agencies, provide[ed] Officers information and directed Officers to locations with-in the jurisdiction of DeSoto County Sheriff Department, where stolen items were delivered and were at said locations, to include the address of 1540 Broady Road, Nesbit, DeSoto County, MS. Items described at said location to include industrial equipment, four wheelers, lawn mowers and other items thought to be stolen property. Therefore, the property occupied by Andres Loya residing in the state of Mississippi, DeSoto County, at 1540

Broady Road, Nesbit, MS 38651 has been confirmed to be a good and correct address in DeSoto County, where alleged stolen property has been received and is currently being stored[.] We respectfully request a search be issued for said location.

Justice Court Judge Billy Lantry issued the requested warrant. Officers of the DeSoto County Sheriff's Department executed the search warrant at 1540 Broady Road and seized stolen trailers, lawn mowers and a large amount of U.S. currency—more than one hundred thousand dollars in bundled bills. They also seized a large quantity of cocaine.

The affidavit of Commander Blackston and Sgt. Combs prepared in support of their application for the first search warrant lacked indicia of probable cause sufficient to prevent an affidavit from being "bare bones." Specifically, the affidavit did not state:

1. whether the informant's statement was against his/her penal interests;

2. whether the information on the affidavit had been corroborated by an independent investigation or contemporary observations of police;

3. in detail, any of the information provided by the informant;

4. whether the informant's reliability was corroborated by something other than unsupported conclusions of the affiant.

*U.S. v. Shugart,* 117 F.3d 838, 844 (5th Cir.1997).

The Fourth Amendment declares "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation …." The "oath or affirmation" is a formal dec-

laration—a swearing—that the information the affiant has provided on the affidavit is the truth. This procedure is designed to impress upon the affiant the importance of his words; the moral, religious or legal significance of formally undertaking to tell the truth and to warrant that someone take the responsibility for the facts alleged. If any of the information contained in the written affidavit is false, perjury could be charged against the affiant. An affidavit must present the issuing authority a sufficient factual basis for determining whether probable cause exists for making the desired search or seizure. *State v. Sherrick,* 98 Ariz. 46, 53, 402 P.2d 1 (1965). In other words, the affidavit would convey sufficient facts to an informed reader to establish the affiant's credibility.

The Fourth Amendment demands that a "neutral and detached" magistrate be interposed between the police and invasions of a citizen's privacy. *Connally v. Georgia,* 429 U.S. 245, 249, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977). It is the function of the issuing magistrate to determine the reliability of information and credibility of the affiants in deciding whether the requirement of probable cause has been met for making the desired search or seizure. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 2679, 57 L.Ed.2d 667 (1978). If the affidavit itself is sufficient to satisfy probable cause, suppression of the evidence obtained is not required. *U.S. v. Massey,* 687 F.2d 1348,1356 (10th Cir.1982).

Sgt. Combs testified that the officers had been instructed that it was "not necessary to put lots of information in the affidavit." The magistrate, does, however, need sufficient and competent facts detailing the underlying circumstances sufficient to enable reasonable inferences to be drawn as to whether probable cause exists. An affidavit couched only in conclusions denies the magistrate the opportunity to draw valid conclusions and robs the

Fourth Amendment of its essence. The "neutral and detached" magistrate must be free of doubts as to the truthfulness and accuracy of the sworn information.

In this case, in an effort to rehabilitate an otherwise insufficient affidavit, the government offered the testimony of Commander Mark Blackston, Sgt. Keith Combs, and Justice Court Judge Billy Lantry. The officers described the circumstances surrounding issuance of the search warrant and the information that Judge Lantry had in granting the warrant. Tellingly, the officers failed to inform Judge Lantry that they had entered the property and copied serial numbers from equipment **before** securing the search warrant. The government contends that regardless of the sufficiency of the affidavit in support of the search warrant, Judge Lantry possessed sufficient factual information to support a finding of probable cause. The officers pierced their own credibility as affiants by withholding the true source of their basis for the affidavit; i.e. the unwarranted search. Judge Lantry testified that he might not have granted the search warrant if he had known the officers had entered the property before obtaining the warrant.

The search of Loya's residence pursuant to the Lantry warrant was unconstitutional given the warrant was issued on the basis of information gained as a result of the prior warrantless search of Loya's property, which search was bottomed on nothing more substantial than the "the old Mexican's" shrug. The officers testified that the old man could not speak English. If he could not speak English, how could he have understood the meaning of their request to "look around?" And, if he could not understand their request, how could he have consented to the warrantless search?

It is well established that a defendant's mere acquiescence to a show of lawful authority is insufficient to establish volun-

tary consent. *U.S. v. Jaras,* 86 F.3d 383, 390 (5th Cir.1987). The constitutionality of consent in the context of the Fourth and Fourteenth Amendment is laid out in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state must show that there was consent to the search and that such consent was a product of the individual's free and unconstrained choice, based on the totality of the circumstances. *Id.* at 227, 93 S.Ct. 2041. These circumstances include the consenting party's age, intelligence, education, experience, and knowledge of the right to withhold consent. *Id.* at 226, 93 S.Ct. 2041. The prosecution always bears the burden of proof to establish existence of effective consent. *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In examining the surrounding circumstances to the first search involved in this matter, particularly the fact that the "old Mexican" did not understand or speak English, the court concludes that the "shrug" did not constitute consent and instead was a mere acquiescence to a show of lawful authority.

The foregoing conclusion begs the question of whether the "old Mexican" had a sufficient interest in the property to grant any sort of consent. No proof was offered at the suppression hearing of any possessory interest in the property which could have been lodged in the "old Mexican." The police may search without a warrant when they receive consent to do so from a person with authority to give consent. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *U.S. v. de La Rosa–Valenzuela,* 993 F.Supp. 466, 470 (W.D.Tenn.1997) (citations omitted). Consent to search is effective only when given by one with "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "Common authority rests on mu-

tual use of the property by persons generally having joint access or control for most purposes `....`" *Id.* at 171, 94 S.Ct. 988. The record is void of information as to whether Commander Blackston and Sgt. Combs attempted to learn whether the "old Mexican" was a guest or the owner of 1540 Broady Road. To infer consent in this case is only a conjecture and would exceed the scope of any recognized exception to the Fourth Amendment's bar to warrantless entry of the home.

The second search of Loya's residence was illegal as the affidavit did not contain sufficient information to support a finding of probable cause and was based on information obtained absent knowing consent. The evidence obtained in the second search was fruit of the poisonous tree which must be excluded pursuant to the dictates of *Wong Sun v. United States,* 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Cruz,* 581 F.2d 535, 537–38 (5th Cir.1978). *Wong Sun* states that the "exclusionary rule bars evidentiary 'fruit' obtained 'as a direct result' of an illegal search or an illegal coercive interrogation." The exclusionary rule's bar only extends from the "tree" to the "fruit" however, if the fruit is sufficiently connected to the illegal tree. *United States v. Brookins, III,* 614 F.2d 1037 (5th Cir.1980). Based on that, the motion to suppress the evidence seized pursuant to the first warrant must be **GRANTED.**

### Search Number Three

The third search on June 4, 2002, was conducted by Sam Aldridge—a law enforcement member of the DEA Task Force. Circuit Court Judge Ann Lamar issued a second search warrant and members of law enforcement executed same on June 4, 2002. The affidavit attached to Aldridge's application for the requested warrant stated that his information came from a confidential source (CS) working with Lt. Johnny Cox and DEA Agent Hol-

land. It further stated that as of September 2000, Cox had been conducting a drug investigation involving the Loya family, including Andres Loya. In May 2002, Cox and Holland met with the CS who informed them that Andres Loya, other members of the Loya family and some Memphis, Tennessee, individuals were involved in trafficking large amounts of narcotics. The CS provided Cox and Holland with documents corroborating the CS' statements and other information that the agents discovered during their investigation before the CS was interviewed. Prior to the third search, the DEA agents were aware that Andres Loya resided at 1540 Broady Road and that Loya was involved in trafficking narcotics. Cox and the CS had purchased marijuana from Cosme Loya, had followed him to Andres Loya's residence and had conducted surveillance of Cosme at Andres' residence.

The search warrant issued by Judge Ann Lamar was based on well-articulated elements establishing probable cause and the evidence obtained as to that search is admissible. Though the second affidavit refers to the first search warrant and incorporates activities described in the first affidavit, such duplication of facts does not affect its constitutionality. The second warrant provides a sufficient recital of independent facts and information to allow it to stand alone as a matter of law. The court concludes that the evidence obtained pursuant to the third search falls within the doctrine of inevitable discovery and is, therefore, admissible. *Nix v. Williams,* 467 U.S. 431, 440, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *U.S. v. Brookins,* 614 F.2d 1037, 1045 (5th Cir.1980). Accordingly, the defendant's motion to suppress the evidence pursuant to the third search is **DENIED.**