**UNITED STATES of America,**

v.

**Paul Preston PERKINS, Defendant.**

**No. P–00–CR–270.**

United States District Court,
W.D. Texas,
Pecos Division.

Dec. 18, 2001.

Kelly Wayne Loving, Assistant U.S. Attorney, San Antonio, TX, for the Government.

Merry A. Worley, Odessa, TX, for Defendant.

**ORDER GRANTING GOVERNMENT'S MOTION FOR RECONSIDERATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

FURGESON, District Judge.

On September 25, 2001, the Court issued an Order Denying Defendant Paul Preston Perkins's Motion to Suppress Evidence. In its Order, the Court held that the Attorney General lacks the authority to cross-designate U.S. Border Patrol agents with federal narcotics law enforcement powers and that the Border Patrol can only make narcotics arrests when performing duties relating to the enforcement of immigration laws. Accordingly, when the Border Patrol agents in the instant case stopped Defendant's vehicle based solely upon a suspicion of drug smuggling, the Court found that they acted beyond the scope of their authority. Nevertheless, the evidence was not suppressed because the agents acted in good faith.

Before the Court is the Government's Motion for Reconsideration, filed October 19, 2001, in the above-styled matter. The Government argues that, despite the favorable outcome, the Court should eliminate from its Order any suggestion that the Attorney General is without cross-designation authority.

Supreme Court Justice Felix Frankfurter once wrote, "Wisdom too often never comes, and so one ought not to reject it merely because it comes too late." [1] Such is the case here. Thus, after careful consideration, it is the opinion of the Court that the Government's Motion should be GRANTED and Defendant's Motion to Suppress Evidence should be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning of June 15, 2000, U.S. Customs Agent William Upchurch received word from a reliable confidential informant that a recreational vehicle (RV) was "being loaded" in Redford, Texas. Based on his experience, Agent Upchurch understood those words to mean that the RV was being packed with drugs. He relayed this information to the U.S. Border Patrol.

The informant's tip soon reached Border Patrol Agents Gregory McConnell and Robert Mooreland, who were observing traffic in a marked Border Patrol vehicle east of Redford. The Agents later spotted the RV, which was towing a small car, and observed the safety strap of the towing dolly loosen and fall onto the roadway. The Agents followed the vehicle and when the roads widened, stopped Defendant's RV. After satisfying themselves of Defendant's U.S. citizenship, the Agents continued questioning him and obtained his consent to search the RV. Agent McConnell found sugar sacks containing bundles that, from his past experience and the obvious odor, he believed contained marijuana. Defendant and his wife, a passenger, were then arrested. Tests later confirmed that the bundles in fact contained marijuana.

Defendant was charged in a two-count indictment with importation of and possession with intent to distribute marijuana. Defendant moved to suppress the drugs and oral statements due to the Border Patrol's lack of reasonable suspicion and probable cause to stop and search the RV. United States Magistrate Judge L. Stuart Platt held a hearing on Defendant's Motion to Suppress Evidence on December 12, 2000. On February 16, 2001, he filed his Proposed Findings of Fact and Recommendation on Defendant's Motion to Suppress Evidence, recommending that the Motion be denied.

Defendant objected to the Magistrate Judge's report, and in conducting a de novo review, the Court became concerned about "the scope of the U.S. Border Patrol's authority to enforce federal narcotics laws under Title 21 when not performing duties relating to the enforcement of immigration laws under Title 8." [2] Because this issue was not adequately addressed by either party during the hearing on the Motion to Suppress Evidence, the Court issued a Show Cause Order on May 31, 2001 and requested that the Department of Justice and/or the Appellate Division of the United States Attorneys Office brief, among other issues: (1) the source of the Attorney General's authority to cross-designate Border Patrol agents with Title 21 arrest powers, and (2) whether this authority is circumscribed by 8 U.S.C. § 1357(a)(5). [3]

On July 20, 2001, the Government filed its Response to Show Cause Order. The

1. *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting) (lamenting about how he should have dissented in a prior case that the *Henslee* majority relied upon in reaching their decision).

2. Show Cause Order at 1.

3. *Id.* at 2.

Government argued that the Attorney General can cross-designate pursuant to 21 U.S.C. § 873(b) and that the Border Patrol's Title 21 arrest powers are not limited to situations in which they are performing duties relating to the enforcement of immigration laws.

On September 25, 2001, the Court denied Defendant's Motion to Suppress Evidence. At the same time, though, the Court held that the Attorney General lacked the authority to cross-designate Border Patrol agents as Drug Enforcement Administration (DEA) employees and could not otherwise confer warrantless drug arrest powers upon Border Patrol agents.[4] Accordingly, Agents McConnell and Mooreland were not authorized to stop Defendant's RV based on the tip that the RV might be carrying drugs.[5] However, suppression was not the proper remedy because the Agents had an objectively reasonable good faith belief that they were authorized to make an investigatory stop based solely upon a suspicion of a narcotics offense.[6]

On October 19, 2001, the Government filed its Motion for Reconsideration, arguing that the Court should eliminate from its Order the conclusion that the Attorney General is not authorized to cross-designate non-DEA employees with federal narcotics law enforcement powers. The Government's Motion contains a more detailed response to the Court's request, pointing to three additional-and more pertinent-sources of the Attorney General's cross-designation authority. For the reasons discussed below, the Court concurs in the Government's assessment of the Attorney General's authority to delegate Title 21 law enforcement powers to the Border Patrol and belief that these powers are not circumscribed by 8 U.S.C. § 1357(a)(5).

## DISCUSSION

No court has analyzed the legitimacy of cross-designating Border Patrol agents as DEA officers with Title 21 enforcement authority. The few courts that have addressed this issue have merely acknowledged that certain Border Patrol agents have been cross-designated without determining the validity of their deputation.[7] The Court today holds that Congress has empowered the Attorney General to cross-designate the Border Patrol as DEA offi-

4. *United States v. Perkins,* 166 F.Supp.2d 1116, 1123–30 (W.D.Tex.2001).

5. *Id.* at 1123.

6. *Id.* at 1131–33.

7. *See United States v. Soto–Camacho,* 58 F.3d 408, 410 (9th Cir.1995) (recognizing that "Border Patrol agents are cross-designated as drug enforcement and customs agents, and are trained to detect drug smuggling as well as alien smuggling"); *United States v. Taylor,* 934 F.2d 218, 219 (9th Cir.1991) (acknowledging the cross-designation of a particular officer); *United States v. Outlaw,* 134 F.Supp.2d 807, 816 (W.D.Tex.2001) (asserting that "although the primary task of Border Patrol agents is the enforcement of immigration law, Border Patrol agents are also authorized to enforce narcotics laws," pursuant to 21 U.S.C. §§ 873(b) & 965); *United States v.*

*Portillo–Aguirre,* 131 F.Supp.2d 874, 879 (W.D.Tex.2001) (citing *de La Rosa–Valenzuela, infra* ); *United States v. de La Rosa–Valenzuela,* 993 F.Supp. 466, 468 (W.D.Tex.1997) (stating that certain Border Patrol agents have limited authority to make arrests, conduct warrantless searches, make seizures pursuant to the Controlled Substances Act and are "authorized by the Attorney General to assist her in carrying out her functions under the Controlled Substances Act, pursuant to Title 21 of the United States Code, Section 873(b) and 965"); *cf. Criminal Aliens: Hearing on H.R. 3333 Before the Subcomm. on Immigration, Refugees, and Int'l Law of the House Comm. on the Judiciary,* 101st Cong. 48 (1990) (recognizing that the Border Patrol has limited arrest authority only because it has been delegated to them).

cers with Title 21 enforcement authority; that certain Border Patrol agents have been accorded limited Title 21 enforcement powers; and that these powers may be exercised even when not performing duties relating to the enforcement of immigration laws.

### A. Cross–Designation of the Border Patrol with Title 21 Enforcement Powers.

#### 1. Congress's Authorization of Cross–Designation by the Attorney General.

In three separate sources of law, Congress has conferred upon the Attorney General the ability to enlist the Border Patrol in the enforcement of federal narcotics laws. First, the general delegation statute, 28 U.S.C. § 510, empowers the Attorney General to "from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." One function of the Attorney General is the enforcement of federal drug laws; Reorganization Plan No. 2 of 1973, which has the force of law,[8] transferred from the Department of the Treasury to the Attorney General "all intelligence, investigative, and law enforcement functions ... which relate to the suppression of illicit traffic in narcotics, dangerous drugs, or marihuana ...."[9] Border Patrol agents are employees of the Department of Justice, thus the Attorney General can bestow upon them his Title 21 enforcement functions.

■■ The second source of law authorizing cross-designation of the Border Patrol, and one more specific to the narcotics context, is found in Title 21 itself. In 21 U.S.C. § 871(a), Congress permits the delegation of "any of [the Attorney General's] functions under this subchapter to any officer or employee of the Department of Justice."[10] The Supreme Court has "interpreted [§ 871(a) ] to permit the delegation of any function vested in the Attorney General under the [Controlled Substances] Act unless a specific limitation on that delegation authority appears elsewhere in the statute."[11] The Act contains no such limitation with regard to the Attorney General's power to delegate enforcement authority to Immigration and Naturalization Service (INS) officers and employees.

■■ One of the DEA's functions under the Controlled Substances Act is the making of certain warrantless arrests.[12] Because "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General ..."[13] and the DEA is

---

8. *See* Act of Oct. 19, 1984, Pub.L. 98–532, 98 Stat. 2705 (ratifying and affirming as law reorganization plans implemented prior to the date of enactment).

9. Reorg. Plan No. 2 of 1973, § 1, 38 Fed.Reg. 15932, 87 Stat. 1091, as amended Act of Mar. 16, 1974, § 1, Pub.L. 93–253, 88 Stat. 50, *reprinted in* 28 U.S.C. § 509 app.

10. "This subchapter" refers to subchapter I, which encompasses sections 801 through 904 and is popularly known as the Controlled Substances Act.

11. *Touby v. United States,* 500 U.S. 160, 169, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991) (citation omitted).

12. 21 U.S.C. § 878(a)(3) (enabling a DEA agent to make warrantless arrests "(A) for any offense against the United States committed in his presence, or (B) for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony").

13. 28 U.S.C. § 509. Congress created three exceptions in which the functions of particu-

an agency of the Department of Justice,[14] one function of the Attorney General is arresting people without a warrant in certain situations. Thus, pursuant to § 871(a), the Attorney General can delegate this function to other employees of the Department of Justice, including the Border Patrol.

Third, Reorganization Plan No. 2 of 1973 also specifically entitles the Attorney General to "authoriz[e] the performance of any of the functions transferred to him by the provisions of this Reorganization Plan by any officer, employee, or agency of the Department of Justice."[15] As mentioned above, Reorganization Plan No. 2 of 1973 vested in the Attorney General drug-related investigative and enforcement functions.[16] Therefore, Congress approved of the delegation of these functions to the Border Patrol.

A possible fourth source of the power to cross-designate, and the one cited by courts [17] and the Government in its original brief, can also be found in Title 21. Section 873(b) provides, in relevant part, that "when requested by the Attorney General, it shall be the duty of any agency or instrumentality of the Federal Govern-

ment to furnish assistance, including technical advice to him for carrying out his functions under this subchapter . . . ." [18] In its prior Order, however, the Court found that cross-designation of the Border Patrol could not be grounded in this provision.[19] The Court, concerned with possible over-reaching and deviation from the agency's immigration law enforcement duties, read into § 873(b) an inherent limitation that the Attorney General can only require the agency to perform actions that it already has the authority to perform.[20] In its Motion for Reconsideration, the Government contends that § 873(b) should be interpreted, according to its plain meaning, to permit cross-designation.

The Government's argument is that the Border Patrol, an agency or instrumentality of the federal government, has the duty to assist the Attorney General in enforcing federal narcotics laws by making certain warrantless arrests; the statute contains no restriction to the performance of duties already authorized; and such a limitation should not be implied. The Government highlights how the Court's prior interpretation renders § 873(b) meaningless; because Congress has conferred Title 21

lar Department of Justice employees-administrative law justices employed by the Department, the Federal Prison Industries, Inc., and the Board of Directors and officers of the Federal Prison Industries, Inc.-are not vested in the Attorney General. *Id.*

**14.** *See* Reorg. Plan No. 2 of 1973, *supra* note 9, at § 4.

**15.** *Id.* at § 6.

**16.** *See supra* note 9 and accompanying text.

**17.** *See, e.g., United States v. Outlaw,* 134 F.Supp.2d 807, 816 (W.D.Tex.2001); *United States v. de La Rosa–Valenzuela,* 993 F.Supp. 466, 468 (W.D.Tex.1997); *cf.* 28 C.F.R. Pt. O, Subpt. R, App., at § 11 (noting that the Deputy Assistant Administrator for Investiga-

tive Support "is authorized to exercise all necessary functions with respect to the cross-designation of Federal law enforcement officers to undertake title 21 drug investigations under the supervision of DEA pursuant to 21 U.S.C. § 873(a)"; because § 873(a) does not address cross-designation, one can assume there was a typographical error and that a reference to § 873(b) was intended).

**18.** 21 U.S.C. § 873(b); *see also id.* § 965 (discussing the applicability of the administrative and enforcement provisions of subchapter I to subchapter II, which deals with the import and export of controlled substances).

**19.** *United States v. Perkins,* 166 F.Supp.2d 1116, 1128–29 (W.D.Tex.2001).

**20.** *Id.*

functions upon few agencies, the Attorney General would be limited to seeking assistance from those few agencies who already are charged with providing it.

The Court declines to rule whether § 873(b) by itself allows cross-designation. The Government's arguments are compelling in that the Attorney General can most likely enlist agencies to assist him by performing functions they are not otherwise authorized to do.[21] On the other hand, the suggestion that "assistance" does not encompass delegation is not farfetched, especially considering that § 873(b) is not limited to Department of Justice employees under the Attorney General's control. Because the Court finds that the above-mentioned statutory provisions–28 U.S.C. § 510, 21 U.S.C. § 871(a), and Reorganiza-

tion Plan No. 2 of 1973–grant the Attorney General the authority to cross-designate, it is unnecessary for the Court to now go into an in-depth analysis and interpretation of whether § 873(b) by itself authorizes cross-designation.

■ In sum, Congress has authorized the Attorney General to cross-designate the Border Patrol with Title 21 enforcement powers. Enabling the Attorney General to delegate any of his functions to any employee of the Department of Justice essentially authorizes cross-designation, although Congress does not use that exact label.[22] As an agency of the Department of Justice, the INS and its employees, which include the Border Patrol, can be cross-designated with the narcotics law en-

21. *Cf.* H.R. CONF. REP. No. 97–311, at 121–22 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1853, 1862–63 (stating that the Attorney General may seek assistance from the Department of Defense under § 873(b) even if such assistance is not authorized under other statutes).

22. Congress more explicitly provided for cross-designation in other circumstances. *See, e.g.,* 19 U.S.C. § 1401(i) (defining customs officers to include "any agent or other person authorized by law or *designated* by the Secretary of the Treasury to perform duties of an officer of the Customs Service") (emphasis added). Courts have held that this provision in combination with 19 U.S.C. § 1581(b), which permits Department of the Treasury officers and other authorized people to board vessels to enforce navigation laws, sanction the cross-designation of Border Patrol agents as U.S. Customs agents. *See, e.g., United States v. Thompson,* 475 F.2d 1359, 1362 (5th Cir.1973).

Congress's failure to use specific terms in Title 21 is not fatal to the Government's case. Arguably, Congress may have felt the need to expressly authorize cross-designation under Title 19 because the Border Patrol and the Customs Office are under the command of two different departments-the Department of Justice and the Department of the Treasury, respectively. On the other hand, both the DEA and the INS are agencies of the Depart-

ment of Justice, which is overseen by the Attorney General. This being so, the Attorney General has broad discretion over the division of labor among his employees and so there was no need to use "designate," when perhaps the more appropriate term is "delegate," which Congress used in 28 U.S.C. § 510, 21 U.S.C. § 871(a), and Reorganization Plan No. 2 of 1973.

In another instance, Congress provided a more specific list of what could be delegated. The Attorney General can "authorize any employee of . . . the Department of Justice to perform or exercise any of the *powers, privileges, or duties*" relating to the enforcement of immigration laws. 8 U.S.C. § 1103(a)(1) & (4) (emphasis added). In contrast, Title 21's provision allows the delegation of the Attorney General's "*functions* under this subchapter." 21 U.S.C. § 871(a). One could argue that his functions are merely administrative and managerial, not actual enforcement of the law, which was given to the DEA in 21 U.S.C. § 878. However, the Attorney General's authority to delegate was extended to his functions under subchapter II dealing with importing and exporting illegal narcotics, including the law enforcement powers that were transferred to him under Reorganization Plan No. 2 of 1973. 21 U.S.C. § 965. Therefore, § 871(a) permits the delegation of more than mere administrative and managerial duties.

forcement authority that Congress vested in the Attorney General.

### 2. Cross–Designation by the DEA.

Now that the Court has decided that the Attorney General has the authority to cross-designate the Border Patrol, the next step is determining whether Title 21 arrest powers were actually conferred upon the Border Patrol. If they were not, then the stop and search of Defendant's RV were beyond the scope of the agents' power. The Court holds that their actions were valid.

■ To promote the efficient and proficient enforcement of federal narcotics laws, the Attorney General bestowed upon the Administrator of the DEA his delegation power. Specifically, the Administrator of the DEA "is authorized to redelegate to ... *any of the officers or employees of the Immigration and Naturalization Service* any of the powers and functions vested in him."[23] Because one of the DEA's functions is the enforcement of laws related to the suppression of illegal narcotics[24] and Border Patrol agents are employees of the INS, the DEA can redelegate federal narcotics law enforcement authority to the Border Patrol.

Pursuant to such authority, the DEA has "granted limited Title 21 cross-designation to specified INS officers ...."[25] Among other activities and responsibilities, "INS officers receiving limited cross-designation will also be authorized under Title 21 to arrest, conduct searches and seizures incident to arrest, [and] conduct warrantless searches and seizures ...."[26] Therefore, the Border Patrol has been lawfully granted drug-related law enforcement powers.

### B. Effect of 8 U.S.C. § 1357(a)(5) on the Border Patrol's Title 21 Arrest Powers.

The final issue is whether Title 8's limitations on the Border Patrol's general arrest authority also apply to limit their Title 21 arrest authority. The Court holds that the Border Patrol's narcotics law enforcement powers are separate from, and not limited by, their enforcement powers in Title 8 of the United States Code.

In general, a Border Patrol agent has the authority make warrantless arrests:

(A) for any offense against the United States, if the offense is committed in the officer's or employee's presence, or

(B) for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony,

*if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest* and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.[27]

---

**23.** 28 C.F.R. § 0.104 (emphasis added). The Attorney General's authority to allow redelegation has as its source 28 U.S.C. §§ 509–510.

**24.** 21 U.S.C. § 878 (describing the DEA's enforcement powers); 28 C.F.R. § 0.100 (reciting the general functions of the DEA and delegating to the DEA the Attorney General's functions under Reorganization Plan No. 2 of 1973).

**25.** Memorandum of Understanding Between the Drug Enforcement Administration and the Immigration and Naturalization Service, Part VI(D)(2)(a) [hereinafter Memorandum of Understanding] (internal quotation marks omitted).

**26.** *Id.* at Part VI(D)(2)(b).

**27.** 8 U.S.C. § 1357(a)(5) (emphasis added).

The Court focused on this italicized phrase in its prior Order, believing it to reflect a congressional intent to restrict the powers of the Border Patrol. However, the scant legislative history suggests otherwise.[28] This provision can be reconciled with allowing the Border Patrol to make warrantless arrests for drug offenses even when not performing immigration-related duties: Congress decided to permit a broader arrest authority in a narrow class of cases (*i.e.* only drug violations where the agents have been cross-designated). Nothing in the Code requires that delegated warrantless arrest powers be exercised only when performing duties relating to the enforcement of immigration laws.

In addition, the Memorandum of Understanding between the DEA and the INS reflects the notion that the source of the Border Patrol's drug arrest authority is separate from their general arrest authority. Limited Title 21 enforcement powers were given to INS officers "*in addition to* all authorities conferred on them by any law, statute, or regulation, *including 8 U.S.C. section 1357, . . . .*"[29] Dealing with

the Border Patrol's drug-related enforcement powers separate from their more general enforcement powers reflects the country's obdurate drug policy. Unlike arrests for other felonies, which must be made while the Border Patrol agent is performing duties relating to the enforcement of immigration laws, Congress decided to give drug-related arrests and seizures special treatment-they can be made without any suspicion of an immigration violation.

Congress limited the Border Patrol's general arrest authority out of concern that a broader command would interfere with their paramount responsibility to enforce immigration laws under Title 8.[30] The Court also shares this concern; however, the Court finds that cross-designation will not significantly distract the Border Patrol from performing their primary duty due to the limited nature of their Title 21 powers and the fact that they already are trained to detect drug smuggling and make arrests for narcotics offenses.

■ Contrary to the Court's previously expressed concern,[31] cross-designation

**28.** *See* 136 CONG. REC. H12358–03, at H12361 (1990) (statement of Rep. Smith) (remarking that the reason for granting INS officers general arrest powers was to "protect them from civil liability . . . and . . . prove to drug smugglers that Congress is serious about combating crime along the border," not to narrow their powers); 136 CONG. REC. H3908–02, at H3909 (1990) (statement of Rep. Smith) (stating that giving INS officers general arrest authority "will add vital resources to the war on drugs and crime at no additional expense, better utilize already trained personnel, and address the new realities the INS faces from drug cartels and organized crime").

**29.** Memorandum of Understanding, *supra* note 25, at Part VI(D)(2)(b) (emphasis added).

**30.** H.R. REP. 101–681(I), at 414 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6554 ("The primary purpose of this restriction is to ensure that INS will not be diverted from its primary duty-the administration of the immi-

gration laws of the United States."); *see also Criminal Aliens: Hearing on H.R. 3333 Before the Subcomm. on Immigration, Refugees, and Int'l Law of the House Comm. on the Judiciary,* 101st Cong. 46 (1990) (statement of Rep. Morrison) ("[T]he last thing we need to do, if we are serious about our border enforcement against illegal immigration, is to send [the INS] off to fight the drug war."); *see also* 28 C.F.R. § 0.105 (describing the INS's function as administrator and enforcer of U.S. immigration laws).

**31.** *United States v. Perkins,* 166 F.Supp.2d 1116, 1127 (W.D.Tex.2001) (citing 21 U.S.C. § 878(a)(3)(B), which empowers the DEA to make warrantless arrests for other crimes if certain conditions are met, as removing § 1357(a)(5)'s limitation altogether because the Border Patrol would be delegated this authority).

does not bestow upon the Border Patrol every authority given to the DEA; instead, the Border Patrol's Title 21 powers are quite limited. The Memorandum of Understanding specifically restricts the INS officers to enforcing only federal narcotics laws, not other criminal laws, and provides that they "will not be authorized to conduct controlled deliveries or other investigative or enforcement operations under Title 21 beyond the necessary processing of the initial seizure or arrest." [32] Thus, there should be no worry about INS officers spending a great part of their time enforcing laws unrelated to immigration.

Also, Title 21 enforcement does not require any extra training. As they are often the only law enforcement present along the border where drug trafficking is heaviest, Border Patrol agents already are trained to identify drug smuggling when making immigration stops. [33] The Border Patrol knows what factors amount to reasonable suspicion and probable cause enabling them to perform a search and to arrest a suspect. Thus, arresting a drug smuggler when not performing duties relating to Title 8 enforcement will not significantly interfere with the enforcement of immigration laws because the Border Patrol frequently does so subsequent to making an immigration stop.

■ The Border Patrol's warrantless arrest authority in drug cases, such as this one, is derived from Title 21, not Title 8. There is no indication that Congress meant to limit cross-designated agents' arrest powers to instances when they are performing duties relating to the enforcement of immigration laws, and Title 8's limitation should not be read into Title 21. [34]

## CONCLUSION

By allowing the Attorney General to cross-designate certain Border Patrol agents with limited Title 21 enforcement powers, Congress did indirectly what it declined to do directly. Whether this is the wisest way to legislate federal law enforcement authority is for others, but not for this Court, to judge. Instead, this Court must ensure only that Congress provided for cross-designation, which it did by giving the Attorney General broad discretion to allocate the performance of certain law enforcement functions among his subordinates in the manner that he deems most appropriate. The Attorney General has delegated his drug enforcement functions to the DEA and has permitted redelegation to the INS. The DEA, in turn, has empowered the INS with limited drug enforcement authority in addition to their general arrest authority under 8 U.S.C. § 1357(a)(5).

Agents McConnell and Mooreland, being cross-designated, thus were authorized to stop Defendant's RV and conduct a search even though they were certain that no immigration violation had occurred. The tip relating to the drug offense provided the Agents with adequate reasonable suspicion to stop the RV, and the stop was within the spectrum of responsibility delegated to the INS in the Memorandum of Understanding.

It is therefore ORDERED that Government's Motion for Reconsideration be GRANTED.

**32.** Memorandum of Understanding, *supra* note 25, at Part VI(D)(2)(b).

**33.** 136 Cong. Rec. H3908–02, at H3909 (1990) (statement of Rep. Smith).

**34.** *Cf. Fed. Power Comm'n v. Idaho Power Co.,* 344 U.S. 17, 23–24, 73 S.Ct. 85, 97 L.Ed. 15 (1952) (asserting that limits on the Federal Power Commission's power under one part of the Federal Power Act will not be read into a different part of the Act).

It is further ORDERED that Defendant's Motion to Suppress Evidence be DENIED.