PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE
On this day, the Court considered Defendant Jesus Gerardo Alamo-Gutierrez's *1097 [hereinafter "Defendant"] "Motion to Suppress" (ECF No. 21), filed on November 9, 2018; the Government's "Response to Defendant's Motion to Suppress" (ECF No. 29) [hereinafter "Response"], filed on November 29, 2018; and Defendant's "Reply to Government's Response" (ECF No. 32) [hereinafter "Reply"], filed on December 10, 2018, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion to Suppress should be granted in part and denied in part, for the reasons that follow.
I. FACTUAL BACKGROUND
On August 28, 2018, United States Border Patrol Agent Young stopped Defendant after the agent observed that Defendant was driving erratically. Mot. to Suppress 1-2. Prior to this traffic stop, Agent Young had been approached by a citizen who informed Agent Young that a motorist on the Border Highway was driving dangerously. Id. at 1. According to the Government, Agent Young "located the vehicle in question and observed the vehicle making several hazardous lane changes and hitting a guardrail." Resp. 1. Agent Young then called the El Paso Police Department to request assistance and conducted a traffic stop. Id.
Agent Young detained Defendant until the El Paso police arrived, and the El Paso police officer arrested Defendant under suspicion of driving while intoxicated. Mot. to Suppress 1-2. After Defendant was arrested, Agent Young conducted an immigration record check and discovered prior immigration offenses and removals. Id. at 2. Thereafter, Defendant pled guilty to driving while intoxicated and was sentenced to fifty days of confinement. Resp. 2. Based upon Agent Young's discovery of Defendant's immigration history and removals, an immigration detainer was placed on Defendant while he was incarcerated at the El Paso County Detention Facility. Id.
On October 3, 2018, Defendant was released from the El Paso County Detention Facility to the custody of the United States Border Patrol at the Paso Del Norte Border Patrol Processing Center. Id. At the Paso Del Norte Center, Border Patrol Agent Hernandez obtained information from Defendant regarding his citizenship and immigration status. Mot. to Suppress 2. Defendant admitted that he is not a citizen and does not have any documents allowing him to remain in the United States legally. Id. Thereafter, an Agent used Defendant's biometric information[1] to determine Defendant's prior immigration history. Id. After Defendant had revealed his immigration status and his biometric data was collected, a Border Patrol agent read Defendant his Miranda rights. Id. Defendant thereupon invoked his right to counsel. Id. On October 24, 2018, Defendant was charged with illegal reentry, in violation of 8 U.S.C. § 1326(a). Indictment, ECF No. 11.
Defendant filed his Motion to Suppress on November 9, 2018. Therein, Defendant avers that Agent Young's welfare stop on August 28 violated the Fourth Amendment. Id. at 3. Specifically, according to Defendant, (1) Agent Young lacked the authority to conduct the traffic stop, (2) Defendant was detained beyond the scope of the welfare check, and (3) after El Paso *1098 police arrived, Agent Young conducted an unlawful immigration record search. Id. at 3-5. Based on these alleged Fourth Amendment violations, Defendant asserts that "all evidence" stemming from the traffic stop must suppressed. Id. at 5.
Further, Defendant contends that Agents at the Paso Del Norte Center violated the Fifth Amendment on October 3, 2018, by questioning Defendant about his immigration history and collecting his biometric data before reading Defendant his Miranda rights. Id. at 6. Accordingly, Defendant believes that the following evidence should be suppressed: Defendant's statements concerning his identity and nationality, fingerprints, A-file, and criminal and immigration history. Id. at 7.
II. LEGAL STANDARDS
A. Fourth Amendment
The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement 'through means intentionally applied.' " Brendlin v. California , 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (emphasis removed) (quoting Florida v. Bostick , 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ; Brower v. Cnty. of Inyo , 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ; Terry v. Ohio , 329 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ).
"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno , 420 F.3d 420, 430 (5th Cir. 2005) ; see also United States v. Arvizu , 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ). In order to then arrest the defendant, "a warrantless arrest must be based on probable cause." United States v. Zavala , 541 F.3d 562, 575 (5th Cir. 2008). "Probable cause to arrest exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." United States v. Carrillo-Morales , 27 F.3d 1054, 1062 (5th Cir. 1994). "Although more than mere 'reasonable suspicion' is required, the arresting officer need not have in hand evidence sufficient to convict." Passman v. Blackburn , 652 F.2d 559, 564-65 (5th Cir. 1981).
B. Fifth Amendment
In Miranda v. Arizona , the Supreme Court "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." United States v. Bennett , 626 F.2d 1309, 1311 (5th Cir. 1980) (citing Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ). "The safeguards of Miranda v. Arizona ... are well-established," United States v. Payne , 954 F.2d 199, 201 (4th Cir. 1992), and include "the now famous Miranda rights," Bennett , 626 F.2d at 1311. "[A] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect ... amounts to interrogation."
*1099 Rhode Island v. Innis , 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). However, because "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id. at 301-02, 100 S.Ct. 1682.
C. Exclusionary Rule
"When [law enforcement officers] forego legal means of investigation simply in order to obtain evidence in violation of a suspect's constitutional rights, the need to deter is paramount and requires application of the exclusionary rule." United States v. Cherry , 759 F.2d 1196, 1206 (5th Cir. 1985). "The exclusionary rule of the Fourth Amendment generally prohibits the introduction at trial of not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence discovered later that is derivative of an illegality, or constitutes 'fruit of a poisonous tree.' " United States v. Jackson , 596 F.3d 236, 241 (5th Cir. 2010) (quoting United States v. Grosenheider , 200 F.3d 321, 327 (5th Cir. 2000) ) (internal quotation marks omitted).
"The primary limit on this rule is that otherwise suppressible evidence will still be admitted if the connection between the alleged illegality and the acquisition of the evidence is 'so attenuated as to dissipate the taint.' " Id. (quoting Grosenheider , 200 F.3d at 327 ). "One example of this 'attenuation' limit is known as the inevitable discovery doctrine, which renders the exclusionary rule inapplicable to otherwise suppressible evidence if that evidence would inevitably have been discovered by lawful means." Id. "For the inevitable discovery exception to apply, 'the alternate means of obtaining the evidence must at least be in existence and, at least to some degree, imminent, if yet unrealized.' " Zavala , 541 F.3d at 580 (quoting Cherry , 759 F.2d at 1205 n.10 ). The Government must establish a reasonable probability that evidence would have inevitably been discovered by a preponderance of the evidence. United States v. Lamas , 930 F.2d 1099, 1102 (1991).
III. ANALYSIS
A. Fourth Amendment
First, the Court considers whether Agent Young violated Defendant's Fourth Amendment rights during the August 28, 2018, traffic stop. Defendant does not contest that reasonable suspicion or probable cause existed at the time of the arrest. Rather, Defendant challenges the agent's authority to conduct a traffic stop as well as the scope of the stop. Defendant seeks to suppress evidence obtained as a result of this stop as fruit of the poisonous tree. Mot. to Suppress 3. The Court concludes that whether the traffic stop exceeded the scope of Agent Young's authority is a close question. However, even if the stop violated the Fourth Amendment, the evidence at issue would be admissible because a defendant's identity and A-file are not suppressible.
1. Whether the Border Patrol agent had the authority to stop Defendant is a close question.
According to Defendant, a Border Patrol agent's Congressionally-circumscribed authority limits him from stopping a vehicle for any reason outside of the "illegal alien context." See Mot. to Suppress 3. However, the statute that governs a Border Patrol agent's authority- 8 U.S.C. § 1357 -does not limit immigration officials to immigration-related stops or arrests. Rather, the statute provides that immigration officials may arrest a person "for any offense against the United States, *1100 if the offense is committed in the officer or employee's presence," or
for any felony cognizable under the laws of the United States, if the officer or employee has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony, if the officer or employee is performing duties relating to the enforcement of the immigration laws at the time of the arrest and if there is a likelihood of the person escaping before a warrant can be obtained for his arrest.
8 U.S.C. § 1357(a)(5). Importantly, the Fifth Circuit has interpreted the provision in the statute regarding "the enforcement of immigration laws" a way that broadly delineates a Border Patrol agent's authority. In the Fifth Circuit, "Border Patrol agents may make roving stops on the basis of reasonable suspicion of any criminal activity, and are not limited to suspicion of violation of immigration laws." United States v. Perkins , 352 F.3d 198, 200 (5th Cir. 2003). Accordingly, an on-duty border Patrol agent has the authority to arrest a person if he has reasonable grounds to believe that the person is committing either an immigration offense or a felony-irrespective of whether the felony is immigration-related-and if the person might escape.
Defendant mistakenly cites only to the district court's decision in Perkins but fails to discuss the Fifth Circuit's analysis. Reply 2. Defendant asserts that, pursuant to the district court's analysis, immigration officers may only stop a car for a reason directly related to immigration. Id. at 2-3. Initially, although the Perkins district court denied the defendant's motion to suppress, it stated that "Border Patrol agents may not make a roving patrol stop based solely on a reasonable suspicion of a non-immigration law violation."[2] See generally United States v. Perkins , 166 F.Supp.2d 1116, 1135 (W.D. Tex. 2001), on reconsideration , 177 F.Supp.2d 570 (W.D. Tex. 2001), aff'd , 352 F.3d 198 (5th Cir. 2003). The case was then appealed, and the Fifth Circuit affirmed the district court's decision denying the motion to suppress. See generally Perkins , 352 F.3d at 200.
However, on appeal, the Fifth Circuit delineated Border Patrol agents' authority more broadly than the district court had and asserted that agents may stop motorists "on the basis of reasonable suspicion of any criminal activity, and are not limited to suspicion of violation of immigration laws." Id. The Fifth Circuit's interpretation of 8 U.S.C. § 1357 is entitled to and accorded greater weight than that of the district court. Accordingly, the Court follows the Fifth Circuit's articulation of a Border Patrol agent's expansive authority.
As previously stated, a law enforcement officer may conduct a traffic stop if he has reasonable suspicion of criminal activity. "[T]he facts giving rise to reasonable suspicion must be judged *1101 against an objective standard." United States v. Ibarra-Sanchez , 199 F.3d 753, 758 (5th Cir. 1999) (internal quotations omitted). Thus, the key question is: "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" United States v. Tuggle , 284 F. App'x 218, 223 (5th Cir. 2008) (citing United States v. Rideau , 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) ). "This inquiry does not depend on the 'officer's state of mind, or his stated justification for his actions.' " Id. Accordingly, in light of the statute authorizing a Border Patrol agent's authority as well as related case law, the Court must consider whether an officer of reasonable caution would have grounds to believe that a felony or immigration offense was occurring at the time of the arrest.[3]
a. Whether a reasonable officer would believe an immigration offense was occurring
Erratic driving may support reasonable suspicion that an immigration-related offense is occurring. See United States v. Brignoni-Ponce , 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (asserting that a "driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion" that the driver is committing an immigration-related offense). In Brignoni-Ponce , the Supreme Court determined that the Border Patrol cannot "dispense entirely with the requirement that officers must have a reasonable suspicion to justify roving-patrol stops." Id. at 882, 95 S.Ct. 2574. Border Patrol agents cannot stop motorists near the border "without any reason to suspect that they have violated any law." Id. at 883, 95 S.Ct. 2574. While the case made clear that Border Patrol agents may not stop a vehicle solely because of "the apparent Mexican ancestry of the occupants," the case did not discuss whether a Border Patrol agent has the authority to stop a vehicle if there is reasonable suspicion that the motorist has violated a non-immigration-related law. See ids="9550" index="68" url="https://cite.case.law/us/422/873/#p885">id. at 885-86, 95 S.Ct. 2574. As previously noted, the Supreme Court did, however, assert that "erratic driving or obvious attempts to evade officers can support a reasonable suspicion" to stop a car in a border area. Id. at 885, 95 S.Ct. 2574.
In the Fifth Circuit, factors that may be considered to determine whether reasonable suspicion of an immigration offense exists include:
(1) the area's proximity to the border; (2) characteristics of the area; (3) usual traffic patterns; (4) the agents' experience in detecting illegal activity; (5) behavior of the driver; (6) particular aspects or characteristics of the vehicle;
*1102 (7) information about recent illegal trafficking of aliens or narcotics in the area; and (8) the number of passengers and their appearance and behavior.
United States v. Soto , 649 F.3d 406, 409 (5th Cir. 2011) (citing United States v. Jacquinot , 258 F.3d 423, 427 (5th Cir. 2001) (per curiam) ). In this case, the facts available to the Court are sparse. The parties have not put forward facts regarding the proximity to the border, characteristics of the area, Agent Young's experience, or several other relevant factors. The government contends that, in addition to "making several hazardous lane changes," Defendant "hit[ ] a guardrail." Resp. 1. Hitting a guardrail is an abnormal and erratic driving behavior, so it appears that Defendant's driving may have been erratic enough to support an inference that illegal activity was occurring. On the other hand, Defendant was driving alone, which would not support an inference that an immigration-related offense was occurring. However, based on the information provided to the Court, it is unclear whether Agent Young knew that Defendant was driving alone at the time that he stopped Defendant. If Agent Young was unable to ascertain how many occupants were in Defendant's vehicle prior to stopping the vehicle, then this fact would not impact a finding of reasonable suspicion because the determination is made based on the officer's vantage point at the time the stop occurred. Without more context, it is difficult to ascertain if a reasonable officer would have believed that Defendant may have been committing an immigration offense.
b. Whether a reasonable officer would believe a felony was occurring
Reckless driving is not a felony in Texas; it is a misdemeanor offense. TEX. TRANSP. CODE § 545.401. Further, although driving while intoxicated is a felony in limited circumstances (for example, if the driver has prior similar convictions or a child in the car), driving while intoxicated is typically a misdemeanor. See TEXAS PENAL CODE §§ 49.04, 49.045, 49.09. Thus, whether Agent Young had reason to believe that a driving-related felony was occurring is murky: although driving while intoxicated is typically not a felony in Texas, it may be in limited circumstances. Further, reasonable suspicion is a lower standard than probable cause, and it is certainly possible that a driving-related felony was occurring. The Court determines that it is unclear whether this possibility rises to the level of reasonable suspicion.
In sum, whether Agent Young could have reasonably believed a felony or immigration-related offense was occurring appears to be a close question. Nonetheless, evidence of a defendant's identity and the information contained in his A-file are never suppressible, as is further discussed below in part III(A)(4). Thus, even if no reasonable suspicion existed, the evidence at issue in this case could not be suppressed. Accordingly, the Court need not determine whether Agent Young's traffic stop was based on a reasonable suspicion that a felony or immigration-related offense was occurring.
2. The traffic stop did not impermissibly "exceed the scope of [Agent Young's] welfare check."
Defendant also contends that Agent Young "reportedly checked to see if [Defendant] was ok[ay]" and that "a stop extended beyond the time for which it was originally made violates the Fourth Amendment." Mot. to Suppress 4-5. It appears that Defendant believes that the Border Patrol agent could not, after stopping Defendant and determining that there was reason to believe that Defendant *1103 had committed a crime, detain Defendant until the El Paso police arrived.
As support for his proposition, Defendant cites Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). In Rodriguez , an officer completed a traffic stop. 135 S.Ct. at 1613. After the stop was complete and the officer had issued a written warning to the driver, the officer led his drug-detection dog around the car. Id. The dog alerted the officer to the presence of drugs, and the driver was then indicted for a drug-related offense. Id. The Supreme Court determined that the extension of the stop was illegal and that police may not "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." Id. at 1614. Specifically, the Court reiterated that extending a stop beyond the amount of time reasonably required to complete the stop's mission is unlawful. Id. at 1616 (citing Illinois v. Caballes , 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) ).
Here, the traffic stop did not extend beyond its original scope. Agent Young stopped Defendant because he was driving recklessly, and Agent Young continued the stop until El Paso police arrived because he believed that Defendant was intoxicated. Based on Defendant's reasoning, Agent Young should have conducted a "welfare check" and then allowed Defendant to keep driving even though Agent Young reasonably believed that Defendant was an intoxicated motorist. Defendant does not offer a clear definition as to what he would consider the stop's appropriate scope. At any rate, the Court declines to adopt a rule that would require an officer to release a motorist onto the road after determining that the motorist appears to be intoxicated.
In conclusion, Agent Young did not unlawfully extend the stop beyond the amount of time reasonably required to complete the stop's mission. Rather, the agent believed that Defendant was intoxicated after pulling Defendant over for reckless driving. Thus, detaining Defendant until the El Paso police arrived was within the scope of the traffic stop. Because Agent Young did not unnecessarily prolong the stop, the Court determines that the scope of the seizure was reasonable.
3. The Border Patrol agent's immigration record search was not unlawful.
Finally, Defendant contends that Agent Young violated the Fourth Amendment because he researched Defendant's immigration record after Defendant was arrested. Mot. to Suppress 5. Specifically, Defendant asserts that "[Agent] Young had neither consent nor probable cause to believe an immigration violation had occurred, and this immigration check was therefore unreasonable." Id. As is discussed below, a non-citizen has no expectation of privacy in his A-file. Accordingly, a search of a person's immigration record is not unlawful.
4. Evidence of a Defendant's identity and information contained in his A-File are not suppressible.
In general, a person's identity is never suppressible, and a non-citizen has no reasonable expectation of privacy in his A-file. I.N.S. v. Lopez-Mendoza , 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); United States v. Pineda-Chinchilla , 712 F.2d 942, 943-44 (5th Cir. 1983) ("[A defendant] has no possessory or proprietary interest in the INS file or the documentary information contained in that file. Since he has no legitimate *1104 expectation of privacy in the file, he has no standing to challenge its introduction into evidence."). Thus, searching a person's immigration record is not unlawful.
Defendant asserts that the Court should not rely on Lopez-Mendoza because the case "was decided in an era before mandatory criminal prosecution of immigration crimes." Reply 4. Although the Court recognizes that executive branch priorities regarding immigration enforcement change, the Court cannot disregard applicable precedent because of increased immigration enforcement.
Further, Defendant points out that, in Lopez-Mendoza , the Supreme Court opined that the exclusionary rule should not apply in civil immigration proceedings, in part because "only a very small percentage of arrests of aliens are intended or expected to lead to criminal prosecutions." Reply 4 (quoting Lopez-Mendoza , 468 U.S. at 1043, 104 S.Ct. 3479 ). Based on this language, Defendant asserts that an increase in criminal immigration enforcement should cast doubt on Lopez-Mendoza 's applicability. See id. However, in this section of the opinion, the Supreme Court was not discussing whether the identity of a criminal defendant is suppressible. Rather, the Court was answering a different question-whether the exclusionary rule may apply in a civil deportation proceeding when the evidence in question does not pertain to the person's identity. Lopez-Mendoza , 468 U.S. at 1040-43, 104 S.Ct. 3479. Accordingly, this language from Lopez-Mendoza casts no doubt on the admissibility of the evidence at issue here.
The evidence that Defendant seeks to suppress as a result of the traffic stop-fingerprints, A-file, and criminal and immigration history-is all evidence of identity or information that can be found in his A-file. Because a person's identity is never suppressible and non-citizens do not have standing to challenge the introduction of their A-file into evidence, the Court determines that evidence should not be suppressed.
B. Fifth Amendment
Second, the Court considers whether the Border Patrol Agents at the Paso Del Norte Processing Center violated Defendant's Fifth Amendment rights. As a threshold matter, the Government does not dispute that Defendant was in custody. See Resp. 4. Thus, the Court must only analyze: (1) whether Defendant's statements were within the scope of Miranda protections, and (2) if asking Defendant about his immigration status violated the Fifth Amendment, what evidence-if any-should be suppressed as fruit of an illegal custodial interrogation.
1. Asking Defendant about his immigration status violated Defendant's Miranda rights.
Whether Defendant's Fifth Amendment rights were violated hinges on whether asking about his immigration status was a routine booking question. "Routine booking questions" fall outside of Miranda's scope; therefore, any answers to routine booking questions are not required to be suppressed. Pennsylvania v. Muniz , 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) ; Presley v. City of Benbrook , 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of Muniz , it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists."). In Muniz , the Supreme Court determined that "name, address, height, weight, eye color, date of birth, and current age" are all routine booking questions that "fall outside the protections of Miranda and the answers thereto need not be suppressed." Id. at 601-02, 110 S.Ct. 2638.
While the routine booking question exception is broadly recognized, courts have *1105 struggled when deciding whether questions about immigration status are best understood as routine booking questions or as questions likely to elicit an incriminating response. The Fifth Circuit has not yet squarely addressed this issue. See United States v. Lugo , 289 F.Supp.2d 790, 796-97 (S.D. Tex. 2003) ("The Fifth Circuit came close to deciding the question of whether or not a Miranda warning is required before immigration officials ask an individual in custody about his citizenship.... However, after determining that the controversy could be resolved without addressing that particular issue, the Court decided to 'leave it for another day.' ").
In determining whether a question regarding immigration status should be considered within Miranda 's purview, the Court finds the district court's analysis in United States v. Lugo to be instructive:
The question of whether or not a detainee will eventually be prosecuted is relevant only to the extent that it pertains to whether an interrogator's questions are reasonably likely to elicit an incriminating response regarding the defendant's immigration status. In other words, a situation where the individual asking questions has reason to believe that prosecution will result from the information he or she is gathering is more likely to require a Miranda warning prior to questioning because, based on the nature of the questions, certain answers should be reasonably expected to lead to prosecution-thus making the answers, by definition, incriminatory.
289 F.Supp.2d at 798.[4] Accordingly, the Court concludes that Miranda warnings must be given if the law enforcement officer would reasonably expect that questions about immigration status would lead to an incriminating response.
Here, Agent Hernandez's questioning of Defendant was likely to elicit an incriminating response. When Defendant was brought to the Paso Del Norte Center, he had completed serving the sentence imposed for driving while intoxicated, and the Border Patrol agents sought information specifically about his immigration status. Stated differently, Defendant was not being questioned about some other offense unrelated to immigration. Instead, it appears that the Border Patrol agents were seeking to elicit responses that would reveal an immigration offense-i.e., the offense of illegal reentry, a crime with which Defendant has been charged and remains pending.
Because the Court is of the opinion that questioning Defendant about his immigration status prior to providing the Miranda warnings violated his Fifth Amendment rights, the Court also determines that Defendant's statements regarding his immigration status at the Paso Del Norte Center should be suppressed.[5]
2. Although Defendant's statements are inadmissible, his fingerprints, A-file, and criminal and immigration history should not be suppressed.
When a Defendant's Miranda rights are violated, illegally obtained statements *1106 and the fruits of illegally obtained evidence may not generally be admitted into evidence. However, exceptions to this general prohibition exist. Relevant here, evidence that is derived from an independent source or would have inevitably been discovered through independent, lawful means is excepted from the exclusionary rule. See United States v. Palacios , No. CR H-17-221-01, 2017 WL 2378924, at *5 (S.D. Tex. May 31, 2017) ("The independent source doctrine holds that if evidence is derived from a source independent of illegally obtained evidence, it can properly be admitted into evidence." (citing United States v. Brookins , 614 F.2d 1037, 1041-42 (5th Cir. 1980) ). Additionally, as stated above, a defendant's identity and A-file are never suppressible. Accordingly, even though the Border Patrol agents violated Defendant's Fifth Amendment rights, his fingerprints, A-file, and criminal and immigration history are admissible into evidence.
IV. CONCLUSION
Accordingly, IT IS ORDERED that Defendant Jesus Gerardo Alamo-Gutierrez's "Motion to Suppress" (ECF No. 21) is GRANTED only as to the statements Defendant made on October 3, 3018.
IT IS FURTHER ORDERED that Defendant Jesus Gerardo Alamo-Gutierrez's "Motion to Suppress" (ECF No. 21) is DENIED as to Defendant's fingerprints, A-file, and criminal and immigration history.

According to the Federal Bureau of Investigation's website, "biometric information" is information related to a person's "fingerprints ... palm prints, irises, and facial recognition." FBI, Next Generation Identification (NGI), https://www.fbi.gov/services/cjis/fingerprints-and-other-biometrics/ngi (last visited Jan. 14, 2019). Through the use of a "rapid search service," law enforcement officers may use a person's fingerprints to quickly obtain information regarding the person. Id.

In Perkins , Border Patrol agents received a tip that a motorist was smuggling drugs in a recreational vehicle. 166 F.Supp.2d at 1118-19. The officers then observed the roads, looking for a motorist. Id. After seeing a recreational vehicle and stopping it, the agents asked for and received the defendant's consent to search the vehicle; upon entering the vehicle, they saw bundles that contained marijuana. Id. at 1120. The district court determined that the agents did not have the authority to pull over the car to enforce narcotics laws. Id. at 1123. Further, the court determined that the agents did not have a reasonable suspicion that the defendant was violating immigration laws because the agents were acting directly on a tip that the vehicle was smuggling drugs. Id. at 1130. Notwithstanding this determination, the district court denied the motion to suppress because (i) the suppression of evidence is an extraordinary remedy that the court believed was not warranted and (ii) the agents acted in good faith. Id. at 1131-33.

Defendant also asserts that Border Patrol agents "cannot stop vehicles to 'enforce community health and welfare regulations.' " Id. at 4 (quoting Almeida-Sanchez v. United States , 413 U.S. 266, 270, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) ). In Almeida-Sanchez , a Border Patrol agent stopped a motorist, searched his car, and uncovered marijuana. 413 U.S. at 267-68, 93 S.Ct. 2535. It was undisputed that the agent lacked reasonable suspicion for both the stop and the search. Id. The Supreme Court determined that the stop was illegal because the search "was conducted in the unfettered discretion of the members of the border patrol, who did not have a warrant, probable cause, or consent." Id. at 270, 93 S.Ct. 2535. When the Court mentioned "community health and welfare regulations," which Defendant directly quotes, the Court was discussing when administrative searches to enforce violations of community health regulations could legally be made on less than probable cause. Id. In short, this language was not referring to the scope of a Border Patrol agent's authority when the Border Patrol agent conducts a traffic stop based on reasonable suspicion that a crime has occurred.

To support this distinction between questions that are reasonably likely to illicit incriminating responses and those that are more akin to routine booking questions, the Lugo Court relied on Ninth Circuit case law that had developed the same distinction. Id. at 797-99.

The Court notes that the Government asserts that it "does not seek to admit at trial any of the statements made by Defendant on October 3, 2018" and this portion of Defendant's motion is, therefore, moot. Resp. 3, 7. Nonetheless, in the interest of thoroughness, the Court considers Defendant's arguments regarding these statements and determines that they were obtained in violation of the Fifth Amendment.